Theresa VAN DYKE, Petitioner,

v.

BOSWELL, O'TOOLE, DAVIS &
PICKERING, Respondent.

No. C–3073.

Supreme Court of Texas.

June 5, 1985.

Rehearing Denied Oct. 23, 1985.

John H. Holloway, Houston, for petitioner.

Haynes and Fullenweider, Donn C. Fullenweider and Clinard J. Hanby, Houston, for respondent.

RAY, Justice.

This cause presents the procedural issue of whether a trial court can grant separate trials for a claim and its counterclaim and then preclude litigation of the counterclaim by implying facts from the facts determined in the trial on the primary claim. The trial court held that it was proper to preclude litigation of the counterclaim in this situation. The court of appeals, in an unpublished opinion, Tex.R.Civ.P. 452, affirmed the judgment of the trial court. We reverse the judgments of the courts below and remand this cause to the trial court for proceedings consistent with this opinion.

The law firm of Boswell, O'Toole, Davis & Pickering (Boswell, O'Toole) represented Theresa Van Dyke during the trial of her divorce case. After trial, but before rendition of judgment, Mrs. Van Dyke dismissed Boswell, O'Toole and retained new counsel. Boswell, O'Toole then intervened in the divorce action to recover its fees. Over four months after the filing of the intervention claim and less than one week before the

date set for its trial, Mrs. Van Dyke filed her answer. In her answer, Mrs. Van Dyke generally denied Boswell, O'Toole's claim for fees, contending that the fees were not reasonable and that Boswell O'Toole committed fraud. Also, Mrs. Van Dyke asserted a counterclaim, alleging four acts of malpractice by Boswell, O'Toole: (1) in taking a non-suit in the initial divorce proceeding that allowed Mr. Van Dyke to sell the family's Colorado condominium;[1] (2) in failing to obtain necessary support and maintenance orders of the trial court; (3) in failing to properly present the divorce evidence to establish Mrs. Van Dyke's right to a larger share of the community and separate estates; and (4) in failing to make the proper motions to prevent Mr. Van Dyke from converting or dissipating any of the community property.

When the intervention claim for fees was called for trial on September 30, 1980, Boswell, O'Toole complained about the surprise created by the timing of the malpractice counterclaim filing. Consequently, Boswell, O'Toole moved in the alternative for either a continuance or a striking of the counterclaim. The trial court, however, rejected Boswell, O'Toole's arguments and it orally granted Mrs. Van Dyke's motion for a severance and/or separate trials for the intervention claim for fees and the malpractice counterclaim.

Immediately thereafter, the trial on the intervention claim for fees began. During the course of that trial, counsel for Mrs. Van Dyke cross-examined Huey O'Toole of Boswell, O'Toole about the propriety of taking a non-suit in the initial divorce action and how that act allowed Mr. Van Dyke to sell the family's Colorado condominium against Mrs. Van Dyke's wishes. This line of questioning prompted a motion for mistrial from Boswell, O'Toole. In the bench conference concerning this matter, Boswell, O'Toole argued that if the court denied the mistrial motion, it would main-

---

**1.** The initial divorce action brought by Mrs. Van Dyke ended in a non-suit. Between the taking of the non-suit and the filing of this present action, Mr. Van Dyke sold the family's Colorado condominium without receiving Mrs. Van Dyke's permission. According to Mrs. Van Dyke, this could not have occurred if the divorce action was pending.

tain that the malpractice counterclaim should be precluded on the grounds that the malpractice issues were being litigated in the trial on the intervention claim. The trial court denied Boswell, O'Toole's motion for mistrial and counsel for Mrs. Van Dyke further cross-examined Huey O'Toole about this matter.

Upon completion of the trial, the jury returned its verdict awarding Boswell, O'Toole $87,232.91 for its fees in the divorce action and $7,000 for prosecuting the intervention claim. While the jury did not expressly determine whether Boswell, O'Toole committed malpractice, its answer to the special issue determining the reasonable value of Boswell, O'Toole's fees considered the following factors:

1. The time and labor involved, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly.

2. The likelihood, if apparent to the jury, that the acceptance of the particular employment will preclude other employment by the lawyer.

3. The fee customarily charged in the locality for similar legal services.

4. The amount involved and the results obtained.

5. The time limitations imposed by the client or by the circumstances.

6. The nature and length of the professional relationship with the client.

7. The experience, reputation, and ability of the lawyer or lawyers performing the services.

■ On December 5, 1980, the trial court rendered judgment in the divorce case. In this judgment, the court severed the already litigated intervention claim for fees and the unlitigated malpractice counterclaim from the divorce action. A severance splits a single suit into two or more independent actions, each action resulting in an appealable final judgment. *See Hall v. City of Austin,* 450 S.W.2d 836, 837–38 (Tex.1970). Thus, the intervention claim for fees and the malpractice counterclaim

became its own action, distinct from the divorce action.

■ Four days later on December 9, 1980, Boswell, O'Toole moved to sever the intervention claim for fees from the malpractice counterclaim and to enter a final judgment for fees based on the jury verdict. The trial court, however, denied this motion. This ruling was significant because it negated the severance portion of the trial court's September 30, 1980 oral order granting a severance and/or separate trials on the intervention claim for fees and the malpractice counterclaim. Thus, the effect of the trial court's rulings was to grant separate trials for the fees and malpractice issues within this severed cause of action. *Van Dyke v. Van Dyke,* 624 S.W.2d 800, 801 (Tex.App.—Houston [14th Dist.] 1981, no writ). In contrast to a severance, separate trials are interlocutory, and are not final and appealable until all the separated claims and issues in the suit have been litigated. *See Hall v. City of Austin,* 450 S.W.2d at 837–38. By separating the intervention claim for fees and the malpractice counterclaim, the trial court decided to adjudicate the claim for fees first and then subsequently consider the malpractice counterclaim.

The trial on Mrs. Van Dyke's separated counterclaim for malpractice, however, never took place. Instead, the trial court rendered judgment on the intervention claim for fees for Boswell, O'Toole based on the jury verdict and summary judgment on the malpractice counterclaim for Boswell, O'Toole based on "res judicata and/or collateral estoppel." The court of appeals affirmed the summary judgment, reasoning "[i]t is obvious to us that the jury would not have returned [the fees] verdict if they had been persuaded by the evidence of alleged malpractice on the part of [Boswell, O'Toole]."

■ In retrospect, it is easy to decide what the trial court could have done to avoid the dilemma we now face. It could have struck the counterclaim as being untimely filed; it could have continued the cause until the parties were ready to liti-

gate the intervention claim and the counterclaim together; or, it could have ordered the counterclaim to be litigated immediately along with the intervention claim. By employing any of these options, the trial court would not have created the need for separate trials on the intervention claim for fees and the malpractice counterclaim. Nonetheless, Rule 174(b), Tex.R.Civ.P., permits a trial court to order separate trials for a claim and its counterclaim in "furtherance of convenience or to avoid prejudice," and the trial court's decision to grant separate trials should not be disturbed on appeal absent an abuse of discretion. *Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648, 650 (1958). The record reflects that the trial court granted separate trials to allow Mrs. Van Dyke an opportunity to prove her case for malpractice, while preventing additional delay in finalizing the divorce. Since this was done in furtherance of convenience and to avoid prejudice, the trial court did not abuse its discretion.

■ Consequently, we must determine the preclusive effect, if any, of the trial on the intervention claim for fees with respect to the malpractice counterclaim. The notion of precluding litigation based on prior litigation involves the related doctrines of res judicata and collateral estoppel. Res judicata, or *claim* preclusion, precludes litigation of claims within the same cause of action that were or could have been litigated in the first action. *Texas Water Rights Comm'n v. Crow Iron Works,* 582 S.W.2d 768, 771–72 (Tex.1979). A logical corollary to this rule is that the res judicata effects of an action cannot preclude litigation of claims that a trial court explicitly separates or severs from that action. *See Chandler v. Hendrick Memorial Hospital,* 317 S.W.2d 248, 251 (Tex.Civ.App.—Eastland 1958, writ ref'd n.r.e.); *Morrison v. St. Anthony Hotel,* 295 S.W.2d 246, 249 (Tex. Civ.App.—San Antonio 1956, writ ref'd n.r. e.). Since the trial court granted separate trials for the intervention claim for fees and the malpractice counterclaim, the res judicata effects of the action on the intervention claim for fees cannot preclude the malpractice counterclaim.

■ Collateral estoppel, or *issue* preclusion, is more narrow than res judicata in that it only precludes the relitigation of identical issues of facts or law that were actually litigated and essential to the judgment in a prior suit. Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties. *See Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984); *Wilhite v. Adams,* 640 S.W.2d 875, 876 (Tex.1982); *Restatement (Second) of Judgements* § 27 (1982). Thus, unlike the broader res judicata doctrine, collateral estoppel analysis does not focus on what could have been litigated, but only on what was actually litigated and essential to the judgment.

■ It is without question that the trial on the intervention claim for fees actually litigated the fees issue and essentially determined that Mrs. Van Dyke owed Boswell, O'Toole $87,232.91 in fees under their employment contract. This necessarily established the existence of a contract between Mrs. Van Dyke and Boswell, O'Toole with terms providing for fees in this amount. From this determination, Boswell, O'Toole argues that since malpractice issues were discussed in testimony at trial, they were litigated for purposes of collateral estoppel. We disagree. Section 27, comment (d) of the *Restatement (Second) of Judgments* (1982) states that actual litigation occurs "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." While the malpractice issues were properly raised, the trial judge's granting of separate trials prevented those issues from being submitted for determination and actually determined in the action for fees. Thus, the malpractice issues were not actually litigated in the trial on the intervention claim for fees.

Also, even if we could imply a determination of no malpractice by Boswell, O'Toole from the established fact that fees are owed by Mrs. Van Dyke, that implication would not be essential to the fees determi-

nation. Section 27, comment (h) of the *Restatement (Second) of Judgments* (1982) provides in part: "[i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded." Since the resolution of a claim for fees is not contingent upon a malpractice determination, an implication of no malpractice would not be essential to the determination of the fees issue for purposes of collateral estoppel.

 Finally, a question exists on whether the trial on the separated claim for fees constituted a judgment for purposes of collateral estoppel. While the judgment requirement for collateral estoppel does not alway require a final, appealable judgment, the test for finality is "whether the conclusion in question is procedurally definite." *Restatement (Second) of Judgments* § 13, comment (g) (1982). The factors to be considered in answering this question include whether "the parties were fully heard, [whether] the court supported its decision with a reasoned opinion [and whether] the decision was subject to appeal or was in fact reviewed on appeal." *Id.* However, since we have already determined that the trial on the intervention claim for fees did not actually litigate the malpractice issue and that the malpractice issue was not essential to the fees determination, it is not necessary for us to address the judgment question.

Consequently, we hold that the trial court erred in granting summary judgment on the counterclaim thereby precluding actual litigation of Mrs. Van Dyke's malpractice allegation. There being no reversible error with respect to the separate trial on the intervention claim for fees, we limit the remand of the cause to the counterclaim for malpractice. Tex.R.Civ.P. 503. Accordingly, we reverse the judgment of the court of appeals and remand only the counterclaim portion of this cause to the trial court for proceedings consistent with this opinion.

GONZALEZ, J., files a dissenting opinion in which McGEE, J., joins.

GONZALEZ, Justice, dissenting.

I respectfully dissent. I would affirm the judgment of the court of appeals on the basis that the malpractice issue has already been litigated.

The record shows that Mr. Holloway, Mrs. Van Dyke's attorney, repeatedly questioned witnesses concerning the propriety of a nonsuit taken by O'Toole. In addition to raising questions concerning this specific act of malpractice, Holloway asserted that O'Toole's actions had been worthless to Mrs. Van Dyke and that his representation had been ineffective. Thus, all issues presented by Mrs. Van Dyke's allegations of malpractice were raised by the evidence. Further, Holloway argued these facts to the jury in his closing argument.

The requirements of a successful claim of issue preclusion are that "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984). These requirements have been satisfied. *See also* Restatement (Second) of Judgments § 27 (1982); Comment, *The Future of Offensive Collateral Estoppel in Texas*, 35 Baylor L.Rev. 291, 293 (1983).

The court bases its holding upon two theories. First, the opinion states that

"[w]hile the malpractice issues were properly raised, the trial judge's granting of separate trials prevented those issues from being submitted for determination and actually determined in the action for fees. Thus, the malpractice issues were not actually litigated in the trial on the intervention claim for fees."

697 S.W.2d at 384. This argument begs the question. When determining whether the issue was *actually* litigated in the first trial, it is no answer to say that it was not so litigated because of the mere fact of the grant of separate trials. Further, a party

has no *right* to a second trial when the determination of the first disposes of the issues to be tried in the second. *See Hernandez v. Light Pub. Co.,* 245 S.W.2d 553 (Tex.Civ.App. San Antonio 1952, writ ref'd); 3 R. McDonald, *Texas Civil Practice,* § 10.26 (rev. ed. 1983).

The second basis advanced by the court ignores the wording of the issues submitted to the jury and the findings thereon. Special Issue No. 4 asked the jury to find "the *value of the reasonable and necessary attorney's fees,* ... services ... and ... expenses incurred by Boswell, O'Toole, Davis & Pickering in representing Theresa Van Dyke...." (emphasis added). The jury was to consider the following factors in reaching this determination of the value of the fees: "... the skill requisite to perform the legal services properly ... [t]he amount involved and *the results* ... obtained ... [t]he experience, reputation and ability of the lawyer or lawyers performing the services." (emphasis added). The jury has already considered the alleged malpractice in its finding of the value of reasonable and necessary fees.

Obviously, detrimental actions negligently taken by O'Toole would have little or no value to Mrs. Van Dyke and would not be "reasonable." Fees that are "reasonable" are those that are "fair, proper, just, moderate, suitable under the circumstances" and are "[f]it and appropriate to the end in view." Blacks Law Dictionary, p. 1138 (5th ed. 1979). Negligent work does not generate fees that are "reasonable and necessary." The jury did not find the value of fees in a vacuum devoid of realistic expectations of value received. Neither were they ignorant of the "results ... obtained" or the skill required to perform the services when they awarded $87,232.91 to O'Toole in fees.

This finding by the jury contains more than an implication as to the quality of the services rendered by O'Toole. In light of the factors considered by the jury it is an affirmative finding which takes into account the totality of the circumstances surrounding the assessment of fees and the value to Mrs. Van Dyke of the services rendered. This conclusion is buttressed by the fact that in Special Issue No. 5 the jury determined that the firm had rendered "beneficial services" to Mrs. Van Dyke worth $87,248.91.

The court also suggests that a determination in a separate trial is not a judgment sufficiently final to serve as the basis for issue preclusion. In assessing finality a court is to determine if "the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered." Restatement (Second) of Judgments § 13, comment (g) (1982). The determination rests on the fact that the decision is "procedurally definite." *Id.* It would be ludicrous to establish a procedure for separate trials, try issues in separate trials and then subsequently allow relitigation of those issues formerly decided. The procedure allowing separate trials would be meaningless if the findings in those trials were not afforded a substantial degree of finality. Indeed, this court has said that an order for separate trials "leaves the lawsuit intact but enables the court to *hear and determine* one or more issues without trying all controverted issues at the same hearing." *Hall v. City of Austin,* 450 S.W.2d 836, 838 (Tex.1970) (emphasis added).

I would hold that Mrs. Van Dyke is precluded from relitigating any issues concerning the alleged malpractice of O'Toole. Those issues have already been heard. The final, and crucial step that the court refuses to recognize is that the jury found by its answers to the special issues that O'Toole rendered valuable and necessary services to Mrs. Van Dyke. This is a finding totally at odds with an allegation of legal malpractice by O'Toole or his firm. She is collaterally estopped from relitigating this issue.

In conclusion, the holding of the court unfairly allows Mrs. Van Dyke two bites at the apple. First, she is allowed to present evidence and argue malpractice in an attempt to deny fees owed to O'Toole. She is

then allowed to reargue the same facts again in an attempt to collect a money judgment for malpractice against O'Toole. The net effect is to unfairly subject O'Toole to defend himself twice against the same allegations of misconduct.

For the above reasons, I dissent.

McGEE, J., joins in this dissenting opinion.

### DISSENTING OPINION ON MOTION FOR REHEARING

KILGARLIN, Justice, dissenting.

I concur with the dissent of Justice Gonzalez but would offer an additional reason why the judgment of the court of appeals should be affirmed.

Boswell, O'Toole, Davis & Pickering filed its petition in intervention for attorney's fees in the divorce action between Theresa Van Dyke and Gene Van Dyke on May 9, 1980. It was not until September 25, 1980 that an instrument styled "Answer of Theresa Van Dyke to Plea in Intervention of Boswell, O'Toole, Davis & Pickering" was filed. Trial was already scheduled for September 30, 1980, at the time of the filing of the answer. On the day of trial, Boswell, O'Toole filed a motion to strike the answer, in which they alleged that they had not learned until the previous day that the answer had been filed. In the motion to strike, the firm alleged that the answer was a complete surprise; that it was filed without prior leave of court, and within seven days of the date of trial, all in violation of Tex.R.Civ.P. 63. With a jury panel awaiting voir dire examination, the trial court considered the motion to strike and then severed out paragraph IV of the answer for trial at a later date.

The record fails to reveal that the trial court ever granted leave for the filing of Theresa Van Dyke's answer. The motion to strike should have been granted by the trial court because of the late filing and showing of surprise.

After the jury trial with its verdict favorable to Boswell, O'Toole, the trial judge granted their motion for summary judgment. Our court now concludes that it was error for the trial judge to grant the summary judgment on a res judicata theory. While I disagree with the court as to this holding, a summary judgment was nevertheless proper even if it was granted on an erroneous ground if it "may properly be upheld on an alternative ground expressly presented to the trial court ..." *Petroscience Corp. v. Diamond Geophysical, Inc.,* 684 S.W.2d 668 (Tex.1984). Because Boswell, O'Toole's motion to strike was an alternative ground that would properly be upheld, the subsequent granting of the summary judgment should be affirmed irrespective of the stated basis on which that judgment was granted.

Moreover, Mrs. Van Dyke had her day in court on her defensive theory of legal malpractice. During the trial to the jury on the issue of attorney's fees, the record is replete with instances where Mrs. Van Dyke's attorney injected legal malpractice into the case in an effort to defeat the claim for attorney's fees. The jury chose not to accept her theory.

Final judgment in behalf of Boswell, O'Toole was proper.

McGEE, J., joins in this dissenting opinion.