In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00197-CR


______________________________




SCOTT MICHAEL JACKSON, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court at Law


Bowie County, Texas


Trial Court No. 01M1868-CCL




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 Scott Michael Jackson has filed an appeal from his conviction for driving while intoxicated. 
He is represented by retained counsel, Daniel Siler. The record was not filed, and although counsel
orally informed our clerk's office that his client wanted to dismiss the appeal, he did not confirm that
in writing, despite several attempts by our Court to remind him to do so. 

 Accordingly, we abated his appeal for a hearing. The trial court conducted the hearing at
which both Siler and Jackson appeared. Based on the evidence presented at that hearing, the trial
court entered a finding that Jackson did not wish to pursue the appeal. 

 The appeal is dismissed.


 William J. Cornelius

 Chief Justice


Date Submitted: April 18, 2002

Date Decided: April 18, 2002


Do Not Publish



"BR1">
 Darrell McKnight and Michael Palmer made a claim with their insurer, American Mercury
Insurance Company (American Mercury), seeking payment for damage to their metal building
resulting from a hailstorm in March of 2000. Initially, American Mercury issued a check to pay for
the damage assessed. When McKnight and Palmer, dissatisfied with the amount paid, refused to
accept the check and, instead, filed suit in Upshur County (Upshur County litigation), American
Mercury reinvestigated the claim. Upon its reinvestigation, American Mercury discovered that the
damage, if there ever was any, had been cured by natural processes. So, during the Upshur County
litigation, American Mercury maintained its position that it owed nothing to McKnight and Palmer
because there was no remaining discernible damage to the building.

 Several years later and following a trial to an Upshur County jury, the trial court entered
judgment that McKnight and Palmer take nothing. McKnight and Palmer then tried to deposit the
check that American Mercury had initially issued several years earlier. Not surprisingly, American
Mercury refused to honor that check. McKnight and Palmer then sued again, this time in Gregg
County (1) (Gregg County litigation). American Mercury moved for summary judgment on the ground
that the doctrine of res judicata barred the Gregg County litigation. The trial court agreed and
granted summary judgment that McKnight and Palmer take nothing. They now appeal that judgment
to this Court. We first discuss the details and factual allegations of both suits.

I. FACTUAL AND PROCEDURAL HISTORY

 A. Upshur County Litigation

 Again, before either suit was filed, American Mercury tendered a check in the amount of
$24,055.70. (2) McKnight and Palmer disagreed with the amount of the check and filed suit in Upshur
County seeking damages. See McKnight v. Am. Mercury Ins. Co., cause number 401-02. In their
petition, filed in June 2002, McKnight and Palmer described the case as one "involving, breach of
contract, violation of the Texas Deceptive Trade Practices Act, and violations of the Texas Insurance
Code." They alleged that American Mercury "failed to provide full coverage for certain damage"
and that, as a result, they "herein [sue] for payment of all property damage covered under the terms
of this policy of insurance." 

 Attached to American Mercury's designation of expert witnesses, filed February 24, 2005,
are three reports important to the analysis of the Upshur County litigation: (1) a report dated
November 10, 2003, following a reinspection by the claims service that originally inspected the
building, (2) a follow-up report dated November 12, 2003, summarizing the November 10 report's
findings, and (3) an engineering firm's report dated February 14, 2005. The November 10
reinspection report included the findings following an examination of the structure:

 Our inspection of the building found no damage to the exterior metal walls related
to hail. We also gained access to the roof and verified that no damage to this metal
structure was found. We did find areas where hail had left marks on the roof,
however no dents, dings, or impressions from hail were found. As you can tell in our
photographs, there are areas where hail appears to have struck the roof and left marks
on the chalking or acid build up on the roof. As you can tell in our photographs,
these areas are easily wiped away and have not reduced the life expectancy of this
roof. These marking[s] are sometimes misconstrued as being hail damage. The
chalking or acidation of this roof is due to weather and can be found on all metal
structures. Once again, we found no evidence of hail damage to the exterior walls
or the roof of this building.


The follow-up report explained that the original inspection in 2000 did show hail damage and
concluded that it was "possible that due to heat and severe weather conditions in East Texas that
these dings are no longer visible." The report continued, suggesting that the previously visible dings
"may have potential [sic] cured themselves through time and weather." It plainly stated that "there
is no visible damage evident during our recent inspection." 

 The engineering firm's report detailed the property's characteristics and outlined the process
by which it investigated the building and the claim of hail damage. First, the report noted that the
company maintains a national database of hailstone reports in excess of 3/4 inch using government
records. Using this database, the firm concluded that there was no hail reported within a three-mile
radius of the building on March 29, 2000, the date McKnight and Palmer allege as the date of the
damaging storm. In fact, according to the database, no hail was reported within a three-mile radius
of the building in the years 2000, 2001, and 2003. Going further, the report noted that no hail was
reported within a six-mile radius on the date at issue. The firm conceded that the lack of reports does
not necessarily "mean that hail did not fall in a particular location." 

 On ground level, the firm reported "no evidence of hail impact, spatter marks, or dents in the
metal siding." Regarding the roof, the report noted that some hail spatter marks had removed the
surface grime of the metal roof, but there were "no observable dents associated with the spatter
marks" and the impact had not removed the paint coating. The firm reported no evidence of hail
damage to the trim or other features of the metal building. The firm discussed in detail its findings,
confirmed the structural integrity of the building, and noted as well that even the visible spatter
marks that had removed the surface grime on the roof had probably been sustained in the most recent
hailstorm since "[s]patter marks fade over time, usually six months to a year." So, the firm, too,
observed no damage to the metal building. Even the spatter marks, which here, the report suggests,
were cosmetic, temporary blemishes, were not likely the result of the hailstorm McKnight and
Palmer allege happened in March 2000. Again, these three reports were filed along with American
Mercury's designation of expert witnesses on February 24, 2005. 

 Additionally, on January 31, 2006, American Mercury responded with the following in its
supplemental response to a request for disclosure:

 Defendant American Mercury Insurance Company denies the allegations of the
Plaintiffs' petition. The Plaintiffs have failed to state any specific violation of the
Texas Insurance Code or Deceptive Trade Practices Act which Plaintiffs allege have
been violated by Defendant, so Defendant cannot respond specifically other than to
state that Defendant denies it committed any violation. Defendant adjusted the claim
and sent a check based on its adjustment of the claim that was refused by Plaintiffs. 
Defendant's position is that the original adjustor either misadjusted the extent of the
damage or that any damage to the roof was "repaired" by physical processes
described by Defendant's expert Robert Fleishmann. Defendant further alleges that
Plaintiff Michael Palmer is not a proper party to this cause of action. Plaintiffs have
failed to comply with the conditions of the insurance policy in question in bringing
this cause of action. Plaintiffs have no damages because the building in question was
sold to Dr. Jody Syring in an arm's length transaction. Dr. Syring was not told of and
was not aware of any damage to the building as alleged by Plaintiffs.


American Mercury relied on the reinspection and engineering reports.

 On April 13, 2006, the Upshur County jury answered the following question in the negative: 
"Did American Mercury Insurance Company fail to comply with the insurance agreement?" (3) The
trial court signed a take-nothing judgment on June 5, 2006. 

 B. Gregg County Litigation

 After the Upshur County litigation, McKnight and Palmer attempted to deposit the check
issued several years earlier, only to discover that American Mercury refused payment on the check. 
As explained, during the course of the Upshur County litigation American Mercury maintained that
further investigation revealed that there was no hail damage to the property and, thus, nothing owed
on the claim.

 In their petition filed on March 15, 2007, (4) in the Gregg County litigation, McKnight and
Palmer alleged that American Mercury breached the insurance contract by refusing to honor the
check issued years earlier on the claim prior to the Upshur County litigation. They also alleged that
American Mercury's refusal breached its duty of good faith and fair dealing. They sought to recover
the amount of the check ($24,055.70) and exemplary damages. 

 McKnight and Palmer now take the position that the Upshur County suit is distinguishable
from the Gregg County suit because, in Upshur County, the two claimed that American Mercury
breached the insurance agreement by paying an insufficient amount on the claim whereas, in Gregg
County, the two claimed that American Mercury breached the insurance agreement by refusing to
honor the check initially issued on the claim. In other words, McKnight and Palmer contend that
they seek different damages in this case than they did in the Upshur County suit. American Mercury,
of course, disagrees with this characterization and successfully argued to the trial court its position
that the Gregg County litigation was barred by the doctrine of res judicata. 

II. APPLICABLE LAW: DOCTRINE OF RES JUDICATA

 Essentially, the doctrine of res judicata, or claim preclusion, (5) gives a plaintiff one bite at the
cause of action apple. Weiman v. Addicks-Fairbanks Road Sand Co., 846 S.W.2d 414, 418 (Tex.
App.--Houston [14th Dist.] 1992, writ denied). If the defendant wins the original suit, then, the
plaintiff is barred from bringing another action on the claims actually litigated in the action, as well
as on claims that could have been litigated in the original action. See Barr v. Resolution Trust Corp.,
837 S.W.2d 627, 628 (Tex. 1992); Fiallos v. Pagan-Lewis Motors, Inc., 147 S.W.3d 578, 584 (Tex.
App.--Corpus Christi 2004, pet. denied); Dresser Indus., Inc. v. Underwriters at Lloyd's, London,
106 S.W.3d 767, 770 (Tex. App.--Texarkana 2003, pet. denied). Thus, a party may not pursue a
claim determined by the final judgment of a court of competent jurisdiction in a prior suit as a
ground of recovery in a later suit against the same parties. Igal v. Brightstar Info. Tech. Group, Inc.,
No. 04-0931, 2008 Tex. LEXIS 422, at *18 (Tex. May 2, 2008); Tex. Water Rights Comm'n v. Crow
Iron Works, 582 S.W.2d 768, 771-72 (Tex. 1979). In short, res judicata precludes parties from
relitigating claims that have been finally adjudicated by a competent tribunal. Igal, 2008 Tex.
LEXIS 422, at *18; Barr, 837 S.W.2d at 628.

 To successfully assert the affirmative defense of res judicata, a defendant must prove the
following well-established elements: (1) a prior final judgment on the merits by a court of competent
jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the
same claims as were raised or could have been raised in the first action. See Igal, 2008 Tex. LEXIS
422, at *17-18; Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 449 (Tex. 2007); Amstadt v.
United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996); Crow Iron Works, 582 S.W.2d at
771-72; Cherokee Water Co. v. Freeman, 145 S.W.3d 809, 812-13 (Tex. App.--Texarkana 2004,
pet. denied).

 Here, McKnight and Palmer challenge only the third element, contending that the Gregg
County litigation involves different claims than those advanced in the Upshur County litigation. 
Since the case comes to us in summary judgment posture and since res judicata is an affirmative
defense on which the defendant bears the burden of proof, we will review the record to determine
whether American Mercury conclusively proved as a matter of law that the claims in the Gregg
County litigation were barred by the doctrine of res judicata. See Tex. R. Civ. P. 166a(c); Shah v.
Moss, 67 S.W.3d 836, 842 (Tex. 2001).

III. DISCUSSION

 McKnight and Palmer's claims that American Mercury breached the insurance agreement or
its duty of good faith and fair dealing by refusing payment on McKnight and Palmer's insurance
claim are claims that have been determined in the Upshur County litigation. The record shows us
that, as early as November 2003, American Mercury had taken the position that there was no damage
to the building and, therefore, it owed nothing on the claim. At the very latest, McKnight and Palmer
learned of this position in February 2005 when American Mercury filed its designation of expert
witnesses in which it explained that the designated experts' testimony would reflect "no evidence of
a hailstorm in 2000 having produced any current hail damage to the building." American Mercury
again made its position clear in its supplemental response to a request for disclosure, plainly stating
its position "that the original adjustor either misadjusted the extent of the damage or that any damage
to the roof was 'repaired' by physical processes described [in the attached expert's report]." 

 So, by the time trial was held in April 2006, it was clear that American Mercury maintained
its position that it owed nothing on the claim. Included in the evidence put before the Upshur
County jury were the reinspection and engineering reports that indicated no damage to the building. 
The jury's answer, then, that American Mercury did not breach the insurance contract would have
been made on that basis: that by refusing payment at all on the claim, American Mercury did not
breach the agreement. It follows, then, that the judgment stands for the proposition that American
Mercury does not owe the $24,055.70 previously issued on the claim and refused by McKnight and
Palmer. McKnight and Palmer's post-Upshur County litigation position that American Mercury
breached the insurance agreement by refusing payment on the check, then, has already been litigated
and was determined when the Upshur County jury determined that American Mercury's refusal to
pay any amount on the claim was not a breach of the insurance agreement. Although the Gregg
County suit attempts to shift the focus onto the refusal to honor a check, even McKnight and
Palmer's own pleadings show that the check was originally issued in connection with the insurance
claim. And the Upshur County litigation resulted in a judgment that American Mercury did not owe
McKnight and Palmer any amount of money on that insurance claim. 

 Based on this reading of the record, we conclude that the summary judgment evidence
establishes as a matter of law that the claims that American Mercury breached its contract and its
duty of good faith and fair dealing by refusing payment on the 2000 insurance claim were litigated
and that relitigation of these issues, even cast under a different legal theory, is barred. We overrule
McKnight and Palmer's point of error and affirm the trial court's judgment. 




 Jack Carter

 Justice


Date Submitted: May 19, 2008

Date Decided: September 24, 2008


1. This second suit was originally filed in Upshur County as well under cause number 690-06. 
American Mercury moved to transfer venue based on the fact that the property at issue was actually
located in Gregg County, a fact that McKnight and Palmer later conceded. Although the order is not
included in the our record, the parties refer to an agreed order by which the cause was indeed
transferred to Gregg County under cause number 2007-612-A.
2. Although the date of the check is not clear from the record before us, we note that the
estimate upon which American Mercury issued the check was completed on August 12, 2000. 
3. As instructed, the jury did not answer any of the other five questions subsequent to its
negative answer to this question. 
4. McKnight and Palmer originally filed their petition in Upshur County on October 2, 2006. 
Following the previously-noted transfer, the petition was filed in Gregg County on March 15, 2007. 
5. Although American Mercury's motion for summary judgment and the briefs to this Court
limit their discussion to res judicata generally, we note the distinctions between the related doctrines
of res judicata, also referred to as claim preclusion and of collateral estoppel, also known as issue
preclusion. Collateral estoppel, or issue preclusion, is more narrow than res judicata in that it only
precludes the relitigation of identical issues of facts or law that were actually litigated and essential
to the judgment in a prior suit. Van Dyke v. Boswell, O'Toole, Davis & Pickering, 697 S.W.2d 381,
384 (Tex. 1985). Once an actually litigated and essential issue is determined, that issue is conclusive
in a subsequent action between the same parties. See id.; Wilhite v. Adams, 640 S.W.2d 875, 876
(Tex. 1982). Thus, unlike the broader res judicata doctrine, collateral estoppel analysis does not
focus on what could have been litigated, but only on what was actually litigated and essential to the
judgment. Van Dyke, 697 S.W.2d at 384.