# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-03-00735-CV

---

**Robert N. Berezoski, M.D., Appellant**

**v.**

**Texas State Board of Medical Examiners and Donald W. Patrick, M.D., Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
### NO. GN204526, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant, Dr. Robert N. Berezoski, appeals a district court judgment affirming disciplinary action taken against him by the Texas State Board of Medical Examiners (the Board). The Board originally disciplined appellant in 1996 (the first order) following the death of a patient in his care. Appellant appealed, and the district court reversed and remanded (the first judgment). In 2002, the Board issued a second disciplinary order on remand. Appellant appealed again, and a different district court affirmed (the second judgment). Appellant presents two issues on appeal. First, appellant argues that the second order and second judgment were precluded by the first judgment due to the doctrines of res judicata, collateral estoppel, and "the law of the case." Second, appellant argues that the second district court erred because the Board's second order is not based

on substantial evidence. Because we reject both arguments, we will affirm the judgment of the district court.

**BACKGROUND**

On September 5, 1995, appellant performed nasal surgery on patient J.P. in an outpatient surgery center. The center had an operating room similar to one found in a hospital. Barbara Smith, R.N., and Julie Kumper, appellant's scrub technician, prepared the operating room prior to surgery and were present during the procedure. The parties dispute the amount of anesthesia administered to J.P. during the surgery. The Board maintained that appellant and Smith administered four 25 mg. doses of Ketalar and five 5 mg. doses of Valium. Appellant contended that they administered three doses of Ketalar and four doses of Valium. There is evidence that Smith altered some of the records to coincide with appellant's version. Appellant had intended to place J.P. under conscious sedation, but an expert witness and Kumper testified that J.P. was actually under general anesthesia.

About thirty minutes into the surgery, J.P. began to experience complications culminating in respiratory arrest. The witnesses dispute whether J.P. was conscious and moving. Appellant and Smith maintained that J.P. was struggling, but Kumper testified that J.P. did not move or struggle at all during the surgery. Appellant performed certain procedures to restore J.P.'s breathing and directed his staff to call 911. Two paramedics arrived and observed appellant pumping an Ambu bag attached to an endotracheal tube.[1] Paramedic Horace Lyde immediately checked J.P.'s

---

[1] Medical staff attach an Ambu bag to endotracheal (ET) tubes and squeeze the bag to pump air through the tube and into the lungs. The act of squeezing the bag is known as "bagging."

2

pulse and began chest compressions. J.P. had no pulse. The paramedics observed that the ET tube was pumping air into J.P.'s stomach instead of her lungs. While Paramedic Timothy Laseter prepared to insert a new ET tube, appellant continued to bag J.P. even though the air was going into her stomach.

When the paramedics took J.P. to the hospital, she had a pulse but no neurological responses. Her eyes were fixed and dilated, and she did not move any of her extremities. J.P. had suffered severe anoxic brain injury and was comatose.[2] She died three days later.

On September 13, 1995, a disciplinary panel of the Board conducted a hearing to consider an application for temporary suspension of appellant's Texas medical license based on J.P.'s death. Appellant personally appeared with his attorney. Following the hearing, the Board temporarily suspended appellant's medical license.

On September 15, 1995, the Board filed a formal complaint against appellant seeking to revoke his medical license or institute other disciplinary action. The complaint was referred to the State Office of Administrative Hearings (SOAH) and assigned to an administrative law judge (ALJ). The ALJ held a hearing that focused on whether J.P. was over-medicated, whether she was properly monitored while anesthetized, and whether her care was properly managed when she went into respiratory arrest. After the hearing, the ALJ issued a proposal for decision, which included findings of fact, conclusions of law, and a recommended penalty.

---

[2] The record indicates that J.P. suffered from anoxia and hypoxia, which result from oxygen deficiency.

On November 15, 1996, the Board held a hearing and adopted the ALJ's proposal for decision in its entirety and entered its first disciplinary order. The order contained forty-five findings of fact and six conclusions of law, as well as various penalties. The Board concluded that appellant's conduct constituted "professional failure to practice medicine in an acceptable manner consistent with public health and welfare in violation of section 3.08(18) of [the Texas Medical Practice Act]." *See* Act of May 25, 1999, 76th Leg., R.S., ch. 1271, § 3, sec. 3.08(18), 1999 Tex. Gen. Laws 4383, 4386 (amended 2003) (current version at Tex. Occ. Code Ann. § 164.051(a)(6) (West 2004)).[3] The Board imposed, among other conditions, a two-year suspension of appellant's medical license, followed by eight years of probation, and a $5,000 administrative fine.

After the Board's first order, appellant appealed, asserting nine points of error. In the first judgment, the district court found that "substantial rights of plaintiff have been prejudiced because the administrative findings, inferences, conclusions, or decisions were in violation of Tex. Gov't Code Ann., Section 2001.174(2)(A), (B), (C), (D), (E), or (F) [(West 2000), and Tex. Occ. Code Ann., Section 164.051(a)(6) (West 2004)]."[4] Consequently, the district court reversed and

---

[3] Because the legislature's recent amendments have not substantively changed the law, for convenience we will cite to the current version of the Medical Practice Act.

[4] Section 2001.174 of the Administrative Procedure Act (APA) defines judicial review of administrative decisions. It provides:

> If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:
>
> (1) may affirm the agency decision in whole or in part; and

4

remanded the first order to the Board for "further disposition, if any, consistent with this judgment, limited to the previous administrative record received into evidence."

**The Board's Action on Remand**

Because the first judgment stated neither which of appellant's nine points of error it sustained nor which of the six subsections of section 2001.174(2) of the APA the Board had violated, the Board remanded the case to SOAH to reconsider the proposal for decision in light of the first judgment. On June 7, 2002, the ALJ who originally heard the case issued an order of dismissal from the SOAH docket and returned the remand order to the Board.[5] On October 4, 2002, the Board

---

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

   (A) in violation of a constitutional or statutory provision;

   (B) in excess of the agency's statutory authority;

   (C) made through unlawful procedure;

   (D) affected by other error of law;

   (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; *or*

   (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. § 2001.174 (West 2000) (emphasis added).

[5] The ALJ determined that section 2003.042 of the APA "does not authorize a SOAH ALJ to advise an agency on how to apply a judgment and to reissue a proposal for decision where the reviewing court's judgment precludes reopening the record." *See id.* § 2003.042 (West 2000).

reconsidered its first order in light of the first judgment. The Board's second order describes in

detail the procedure used by the Board on remand:

8. The Board, with advise [sic] of its General Counsel, considered Respondent's nine points of error raised on appeal. The Board determined that all of Respondent's points of error are either moot, or could be corrected by a re-analysis of the evidence in the record and/or rewriting of the Proposal For Decision. The Board further determined that only Respondent's first two points of error concerning the admission into evidence of Exhibit 9, the deposition of Dr. George Toledo, and the admission into evidence of the transcript of the temporary suspension hearing had validity.

9. The Board considered Respondent's point of error that Exhibit No. 9, the deposition of Dr. George Toledo, was erroneously admitted into evidence. According to the Proposal for Decision, Dr. Toledo only testified on the issues of whether Dr. Berezoski performed surgery on patient J.P. without adequate surgical support, and whether Dr. Berezoski was sufficiently experienced in administering general anesthesia to be administering Ketalar and Valium in the amounts that he did without an anesthesiologist or Certified Registered Nurse Anesthesiologist present, not on the primary issue of whether Dr. Berezoski over administered anesthesiology to J.P., and failed to adequately monitor and manage J.P. once she was under the effects of anesthesia, and failed to properly manage J.P.'s anoxia and hypoxia. The Board voted to give the benefit of the doubt on the issue of the admission into evidence of Dr. Toledo's deposition testimony by deleting the ALJ's proposed findings of fact related to Respondent practicing medicine below the standard of care by not having a anesthesiologist or CRNA present during the operation of J.P., and deleted proposed findings of fact 43, 44, and 45.[6]

---

[6] Findings of fact 43, 44, and 45 read:

43. On September 5, 1995, Respondent did not have adequate surgical support to perform the laryngoscopy and septoplasty on J.P.

44. On September 5, 1995, Respondent was not experienced in administering general anesthetics and should not have administered Ketalar and Valium to J.P. without the presence of an anesthesiologist or certified registered nurse anesthesiologist.

6

10. The Board considered Respondent's second point of error regarding Exhibit No. 11 that the transcript of the temporary suspension hearing of Respondent was impermissibly admitted into evidence. A reading of the Proposal for Decision shows that the ALJ did not rely on the transcript in making her decision in any way. Even if admitting the transcript into evidence was an error, the admission was clearly a harmless error. The only indirect reference whatsoever to the temporary suspension hearing made by the ALJ in the Proposal for Decision is a discussion of Exhibit 2 to the temporary suspension hearing, which were Respondent's own medical records. The ALJ compares Exhibit 2 introduced at the temporary suspension hearing to Respondent's Exhibit 57 offered at the SOAH hearing to show that Barbara Lynn Smith, R.N., Respondent's employee, altered the operating report and charge form. Ms. Smith authenticated both copies of the operating report and charge form at the SOAH hearing acknowledging that she had altered the documents. In view of the fact that the ALJ did not rely on the transcript of the temporary suspension hearing in making any of her findings, the Board determined that any error in admitting it into evidence was clearly harmless.

On October 30, 2002, the Board entered its second order, which contained forty-two findings of fact and six conclusions of law. Except for the deletion of findings 43-45 contained in the first order, the findings of fact in the two orders are identical. The Board concluded in its second order that appellant's conduct constituted "professional failure to practice medicine in an acceptable manner consistent with public health and welfare in violation of [the Medical Practice Act]." The Board suspended appellant's medical license until "he can show that he is safe and competent to practice medicine," set forth the minimum terms and conditions with which appellant must comply to make that showing, and imposed a $5,000 administrative penalty.

---

45. On September 5, 1995, Respondent did not have sufficient knowledge of and skill with anesthesiology to anticipate the life-threatening complications, which developed during J.P.'s surgery.

7

Appellant appealed the Board's second order, and the district court affirmed. This appeal followed.

## DISCUSSION

**Res Judicata, Collateral Estoppel, and "The Law of the Case"**

Appellant argues that the Board's second order and the second judgment were precluded by the first judgment due to the doctrines of res judicata, collateral estoppel, and "the law of the case." The Board contends that these doctrines do not apply and that the second order and the second judgment were properly entered.

In general, res judicata is the generic term for a group of related concepts concerning the conclusive effect given final judgments. *Barr v. Resolution Trust Co.*, 837 S.W.2d 627, 628 (Tex. 1992). This general doctrine of res judicata encompasses two distinct categories: (1) res judicata, or claim preclusion, and (2) collateral estoppel, or issue preclusion. *Id.*

Res judicata, or claim preclusion, requires proof of: (1) a prior *final judgment* on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

Collateral estoppel, or issue preclusion, is more narrow than res judicata because it only prevents relitigation of identical issues of fact or law that were actually litigated and essential to the judgment in a prior suit. *Barr*, 837 S.W.2d at 628. Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985). Actual litigation

8

occurs when an issue is properly raised by the pleadings or otherwise, is submitted for determination, and is determined. *Id.* (citing Restatement (Second) of Judgments § 27(h) (1982)). While the judgment requirement for collateral estoppel does not always require a final, appealable judgment, the test for finality is "whether the conclusion in question is procedurally definite." *Id.* at 385 (citing Restatement (Second) of Judgments § 13 cmt. g (1982)). The factors to be considered in determining whether a judgment is final for purposes of collateral estoppel include whether the parties were fully heard, whether the court supported its decision with a reasoned opinion, and whether the decision was subject to appeal or was in fact reviewed on appeal. *Id.*

"The law of the case" doctrine mandates that the ruling of an appellate court on a question of law raised on appeal will be regarded as the law of the case in all subsequent proceedings of the same case unless clearly erroneous. *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). It is used to narrow the issues at successive stages of the litigation and provide uniformity of decisions as well as judicial economy intended to put an end to litigation. *Id.* (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)). A reviewing court does not again pass upon any matter either presented to or directly passed upon or that was, in effect, disposed of on a former appeal to that court. *J.O. Lockridge Gen. Contractors, Inc. v. Morgan*, 848 S.W.2d 248, 250 (Tex. App.—Dallas 1993, writ denied).

### *Application*

Appellant contends that the Board's entry of the second order violates the principle of res judicata. The first element of res judicata, however, is proof of a prior final judgment. *Amstadt*, 919 S.W.2d at 652. Here, the first judgment did not *render* judgment; rather, it *reversed*

9

*and remanded* the first order to the Board for further disposition, if any, consistent with the first judgment. Because the first judgment did not dispose of the Board's claim, it was not *final* for purposes of res judicata. *See* Restatement (Second) of Judgments § 13 (1982); *see also Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) (discussing history of judgment finality for purposes of appeal). Because the first judgment remanded the case, the Board was not precluded by res judicata principles from entering the second order.

In his issue-preclusion argument, appellant contends that the Board could not ignore the court's findings that appellant's substantial rights were prejudiced based on the nine points of error he presented on appeal. The district court, however, made no specific "findings."[7] Appellant reads the first judgment inclusively and assumes that, because the district court listed subsections (A) through (F) of section 2001.174 of the APA in the judgment, it determined that *each* subsection applied. To accept appellant's argument would require us to ignore the first district court's use of the disjunctive article "or" in the first judgment. We cannot interpret the first judgment as sustaining all of appellant's nine points of error, and we cannot determine that the first district court found that each subsection was violated. Because the first judgment remanded for further disposition, if any, we conclude that no specific issue was "determined" for purposes of collateral estoppel. *See Van Dyke*, 697 S.W.2d at 385.

---

[7] Appellant appealed the first order to the first district court, arguing nine points of error. The judge reviewed the order under the substantial-evidence rule and generically concluded that "substantial rights of plaintiff have been prejudiced because the administrative findings, inferences, conclusions, or decisions were in violation of Tex. Gov't Code Ann., Section 2001.174(2)(A), (B), (C), (D), (E), *or* (F) [(West 2000), and Tex. Occ. Code Ann. Section 164.051(a)(6) (West 2004)]." (Emphasis added.)

Appellant also argues that "the law of the case" doctrine applies and that, on remand, the law of the case became:

> (1) Any further determinations on remand were limited to the prior record. The Board could not relitigate or decide anything except as contained in that record. The Board was precluded from using the same findings and conclusions to find any violation of the [Medical Practice Act]; (2) The previous errors were also inherent in any subsequent deliberations; and (3) Any subsequent Board action must be consistent with the [first district] court's conclusions and determinations.

Although the first judgment did limit the Board to the record developed during the administrative hearing, appellant's other law-of-the-case arguments are inconsistent with Texas law. First, the district court's only explicit directive to the Board on remand was to limit its proceedings to the administrative record. The district court did not specify which of appellant's nine points of error it sustained, nor did it indicate how the Board's first order violated section 2001.174 of the APA. Because the first judgment does not indicate otherwise, it appears that the court did not intend to preclude the Board from making some of the same findings or conclusions.

Second, the APA clearly allows the appellate court to reverse *or* remand the agency decision. Tex. Gov't Code Ann. § 2001.174(2). By remanding the case instead of rendering judgment for appellant, and by limiting remand to the previously developed record, the district court implicitly allowed the Board to conduct subsequent deliberations. Had the district court believed that the previous errors could not be corrected by further deliberations, it would have reversed and rendered judgment for appellant. Therefore, subsequent deliberations on remand were not inherently erroneous.

11

Third, because the first judgment stated neither which of appellant's nine points of error it sustained nor which of the six subsections of section 2001.174(2) the Board had violated, the first district court did not set guidelines for subsequent action by the Board.[8] On remand, the Board tried to deduce the errors found by the district court by reviewing the nine points of error that appellant had raised on appeal. It concluded that the ALJ had erroneously admitted two pieces of evidence: the deposition testimony of Dr. Toledo and the transcript of the temporary-suspension hearing. Accordingly, it deleted findings of fact 43-45, which were based on this allegedly inadmissible evidence. Therefore, the Board correctly excluded those findings from the second order. Because the first judgment did not set out guidelines for remand, the Board's subsequent actions are not inconsistent with the first judgment. We conclude that "the law of the case" did not preclude the Board from issuing a second order following remand.

Because the first judgment gave no specific directions besides limiting the Board to the existing record on remand, we conclude that the second order and the second judgment were not precluded by the first judgment by the doctrines of res judicata, collateral estoppel, or "the law of the case." Accordingly, we overrule appellant's first issue.

---

[8] Appellant relies heavily on *Allen-Burch, Inc. v. Texas Alcoholic Beverage Commission*, 104 S.W.3d 345 (Tex. App.—Dallas 2003, no pet.), to support his argument that the Board, by not appealing the first judgment, was precluded by "the law of the case" from issuing a second order. *Allen-Burch*, however, is easily distinguishable because there the first district court *specifically* vacated the appellant's penalty and remanded the case "*for the penalty determination only.*" *Id.* at 351 (emphasis added). In our case, the first judgment made no specific findings and did not limit remand to determination of specific issues.

12

**Substantial Evidence Review**

In his second issue, appellant argues that the second district court erred because the Board's second order is not based on substantial evidence. Appellant now argues that, because the first judgment refers to subsection (E) of section 2001.174 of the APA, which contains substantial evidence language, the first district court found the evidence in the record insufficient to support the Board's first order. Because remand was limited to the previously developed record used to support the first order, appellant argues that the evidence is insufficient to support the second order as well.

*Standard of Review*

In reviewing an administrative decision of the Board, an appellate court uses the substantial-evidence standard defined by the APA. *See* Tex. Gov't Code Ann. § 2001.174(2)(E); *see also Texas State Bd. of Med. Exam'rs v. Birenbaum*, 891 S.W.2d 333, 337 (Tex. App.—Austin 1995, writ denied). Although substantial evidence requires more than a scintilla of evidence, "the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence." *Texas Health Facilities Comm'n v. Charter Med.—Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984). The court may not substitute its judgment for that of the agency as to the weight of the evidence. *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 211 (Tex. 1991). Decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. *Charter Med.*, 665 S.W.2d at 453; *Imperial Am. Res. Fund, Inc. v. Railroad Comm'n*, 557 S.W.2d 280, 286 (Tex. 1977). The court must uphold the agency's actions if the evidence is such that reasonable minds could have reached

13

the conclusion that the Board must have reached in order to justify its action. *Charter Med.*, 665 S.W.2d at 453.

Based on the record developed at the administrative hearing, the Board initially had two bases for disciplining appellant: (1) appellant's personal actions during surgery on September 5 and (2) appellant's inadequate support staff during the surgery. Appellant's personal actions included over-anesthetizing J.P., failing to properly monitor and attend her while she was anesthetized, and failing to properly manage her once she went into respiratory arrest. Appellant's inadequate support staff included the absence of an anesthesiologist or Certified Registered Nurse Anesthesiologist, his and his staff's insufficient CPR training, and inadequate background in administering anesthesia. Both grounds—individually or combined—would have supported the Board's conclusion that appellant violated the Medical Practice Act.

After discounting Dr. Toledo's testimony and findings of fact 43-45, the Board still had grounds to discipline appellant based on his personal actions during the surgery. Appellant, however, cites the Final Report of the Texas Medical Professional Liability Study Commission to the 65th Texas Legislature (December 1976), and argues for the proposition that the Texas Legislature intended to require more than mere proof of a negligent act for discipline to attach under the Medical Practice Act. The plain language chosen by the legislature does not delineate a tort standard but rather allows the Board to discipline a physician who "fails to practice medicine in an acceptable professional manner consistent with public health and welfare." Tex. Occ. Code Ann. § 164.051(a)(6). Appellant does not cite, and we are unable to find, any Texas case imposing a

14

different standard of conduct for discipline under the Medical Practice Act.[9] The question now presented is whether the Board's second order was reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole.

At the administrative hearing, appellant argued that a naturally occurring pulmonary embolism—not over-medication—caused J.P.'s respiratory arrest. Dr. William Yarbrough, Jr., refuted this argument after considering J.P.'s medical records, the incident report compiled by appellant, and the extremely low probability of a fatal pulmonary embolism occurring in a low-risk patient like J.P.[10] Furthermore, Kumper's testimony that J.P. never moved and was not in distress during the surgery—indicating central respiratory depression, as alleged by the Board—conflicted with appellant's and Smith's testimony that J.P. struggled to breathe, which would indicate a pulmonary embolism.

Dr. James McMichael, a board-certified anesthesiologist, testified about the effects of the medication appellant administered to J.P., how appellant failed to monitor her while she was sedated, and appellant's response when J.P. went into respiratory arrest. Although there was significant dispute regarding the alteration of medical records indicating the amount of medication received by the patient, McMichael stated that J.P. received enough medication to cause the hypoxic

---

[9] *Cf. Texas State Bd. of Med. Exam'rs v. Scheffey*, 949 S.W.2d 431, 437 (Tex. App.—Austin 1997, writ denied) (finding sufficient evidence that doctor performed medically unnecessary operations without describing his acts as negligent or grossly negligent); *Guerro-Ramirez v. Texas State Bd. of Med. Exam'rs*, 867 S.W.2d 911, 920 (Tex. App.—Austin 1993, no writ) (finding sufficient evidence that doctor's "practice of medicine was inconsistent with the public welfare" without describing his acts as negligent or grossly negligent).

[10] Yarbrough testified that the chance of a blood clot forming in a low-risk patient is 0.4 percent. The chance of a pulmonary embolism occurring in a low-risk patient is 0.2 percent, and the chance of a fatal pulmonary embolism occurring in a low-risk patient is 0.002 percent.

15

event, regardless of whether appellant administered four doses of Ketalar and five doses of Valium, as the Board alleged, or three doses of Ketalar and four doses of Valium, as appellant maintained. McMichael testified that appellant's office notes indicated that J.P. had a drug overdose, which caused respiratory depression resulting in hypoxia. This led to respiratory and cardiac arrest, ultimately causing J.P.'s death. McMichael further testified that, with the amount of drugs administered to J.P., someone would have to constantly monitor her electrocardiograph, pulse oximeter, blood pressure, and breathing. In his opinion, appellant and his staff could not possibly have adequately monitored J.P. while performing their other duties. Furthermore, McMichael testified that upon discovering that the ET tube was incorrectly inserted, appellant should have removed the tube instead of continuing to bag J.P.

Dr. Richard Perschau testified on appellant's behalf. Perschau stated that, while he could not condone the amount of medication given to J.P., there was a significant possibility that J.P. suffered a pulmonary gastric aspiration during surgery. A pulmonary gastric aspiration brings gastric contents into the pulmonary tree and is a known complication of general anesthesia. Perschau testified that a pulmonary embolism was possible, but less likely.

Dr. Paul Radelat, a board-certified pathologist, reviewed J.P.'s medical record and autopsy report and concluded that the most likely cause of J.P.'s respiratory arrest was over-sedation. A pulmonary embolism was less likely, and gastric aspiration was the least likely cause.

Our review of the record reveals ample evidence that appellant over-administered anesthesia to J.P., failed to properly monitor her while she was sedated, and failed to properly respond when J.P. went into respiratory arrest. Because the evidence is such that reasonable minds

16

could reach the conclusion that the Board reached—that appellant failed to practice medicine in an acceptable manner consistent with public health and welfare—we affirm the district court's judgment upholding the Board's second order. *See Charter Med.*, 665 S.W.2d at 453.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the judgment of the district court.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: July 15, 2004

17