**DRESSER INDUSTRIES, INC., Appellant,**

v.

**UNDERWRITERS AT LLOYD'S, LONDON, et al., Appellees.**

No. 06–02–00113–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 20, 2003.

Decided April 29, 2003.

Rehearing Overruled June 10, 2003.

David J. White, David L. Patterson, Godwin Gruber, PC, Dallas, for appellant.

David M. Gunn, Beck, Redden & Secrest, LLP, Houston, Bruce R. Grace, Baach, Robinson & Lewis, PLLC, Washington, DC, for appellees.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

*Background*

In 1989, Dresser Industries, Inc. was sued by Parker and Parsley for fraud and negligence in providing well servicing operations. Dresser defended the federal court suit and was found liable for both fraud and negligence, and was assessed damages of $185 million. However, the federal court case was reversed. A similar

suit was then filed in state court. The case was settled with Parker and Parsley for $115 million. By this time, Dresser called on its insurance companies to provide coverage for the Parker and Parsley claims. Dresser also had an excess insurance policy with London insurers (excess carrier) and also called on it for indemnity and later sued its insurance companies and the excess carrier for indemnity. On the eve of trial, all the underlying insurance companies and the excess carrier settled with Dresser. The underlying insurance companies paid their limits of liability (except for two insolvent companies), and the excess carrier paid $5.5 million to Dresser and obtained a release. Dresser now has different claims (asbestos-related) and presented them to the excess carrier. The excess carrier refused the claims. Dresser filed this action for a declaratory judgment that the primary insurance was exhausted. Dresser moved for summary judgment on the doctrine of res judicata, which was denied by the trial court. The excess carrier moved for summary judgment on the basis that the underlying claims were not covered losses and did not properly exhaust the underlying insurance coverage, which was granted. The trial court denied the excess carrier's motion for summary judgment based on the release by Dresser executed at the conclusion of the previous litigation between these parties.

The primary issue in this case is whether Dresser has exhausted its primary coverage in accordance with the underlying insurance contracts and thus is allowed to recover from the excess carrier. The trial court agreed with the excess carrier that the underlying claims were not covered and could not serve to exhaust the underlying coverage so the excess carrier could not be reached. Dresser argues that the previous judgment is now res judicata and precludes the carrier from asserting lack of exhaustion in this case. The excess car-

rier argues not only that the underlying claims were for fraud and uncovered, but also that Dresser released the claim now made. Dresser alternatively argues fact issues remain as to coverage.

*Issues*

1. Does res judicata apply, precluding the issue that the underlying claims were not covered, thereby failing to exhaust the primary insurance?

2. Did Dresser release the claim now being asserted?

3. Are there issues of fact to be determined as to whether the underlying claims were covered losses?

*Summary Judgment Standard of Review*

Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.,* 766 S.W.2d 377, 379 (Tex.App.-Texarkana 1989, no writ). The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiff's cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 736 (Tex.1990). Because the movant bears the burden of proof, all evidence favorable to the nonmovant is taken as true and all doubts as to the genuine issue of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

When both parties move for summary judgment and the trial court grants one and denies the other, the reviewing court

shall review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997).

*Res judicata*

Dresser argues that this matter has been resolved. Specifically, when it previously sued the insurance companies, they defended the suits on the same grounds as in this case, i.e., that the Parker and Parsley claims grew out of fraud actions, not negligence, and therefore no coverage was provided. Before trial, that case was settled and a judgment entered dismissing all claims with prejudice between Dresser and its underlying insurance companies and the excess carrier. The judgment did not address the issues of exhaustion of the insurance.

■ Texas follows the "transactional" approach to res judicata. *See Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.,* 837 S.W.2d 627 (Tex.1992). Under this approach, a judgment in an earlier suit "precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit." *Id.* at 630; *Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 798 (Tex.1992).

■ The doctrine of collateral estoppel precludes relitigation of ultimate issues of fact actually litigated and essential to the judgment in a prior suit. *Id.* at 801; *Tarter v. Metro. Sav. & Loan Ass'n,* 744 S.W.2d 926, 927 (Tex.1988).

In the previous litigation, Dresser sued its primary carriers, together with the excess carrier, alleging it had sustained covered losses within the meaning of its policies. These claims arose from the Parker and Parsley claims against Dresser in-

volving well servicing that Dresser had incurred. To recover on the underlying insurance, the policies required an "occurrence," defined as "an accident or event . . . during the policy period neither expected nor intended from the standpoint of the insured. . . ." To recover against the excess carrier, Dresser had to prove that the underlying insurers "have paid or have been held liable to pay the full amount of their respective ultimate net loss . . . covered by underlying Policy/ies." Dresser alleged that the Parker and Parsley claims were covered by both the primary and excess carriers. The insurance companies alleged that such claims were for fraudulent activity of Dresser and therefore not covered by the policies. Those issues were vigorously contested, but were settled and dismissed before the trial.

As a prelude to the present litigation, Dresser has asserted a claim against the excess carrier for asbestos claims it has incurred. It also asserts that the underlying policies have been exhausted by the Parker and Parsley claims. Establishing these issues are conditions precedent to the liability of the excess carrier. *Utica Nat'l Ins. Co. v. Fid. & Cas. Co. of New York,* 812 S.W.2d 656, 662 (Tex.App.-Dallas 1991, writ denied).

■ The doctrine of res judicata precludes relitigation of a claim or cause of action which arises out of the same subject matter and which might have been litigated in the first suit. *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644 (Tex. 1996). Res judicata extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction or series of transactions out of which the action arose. *Barr,* 837 S.W.2d at 630.

The cases use terms such as *barring, preventing,* and *extinguishing* a cause of action by res judicata. *Ingersoll–Rand Co. v. Valero Energy Corp.,* 997 S.W.2d 203, 206–07 (Tex.1999) (res judicata *prevents* parties and their privies from relitigating cause of action that has been finally adjudicated by competent tribunal); *Barr,* 837 S.W.2d at 631 (subsequent suit will be *barred* if it arises out of same subject matter of previous suit and through the exercise of diligence could have been litigated in the prior suit); *Dennis v. First State Bank of Tex.,* 989 S.W.2d 22, 26 (Tex.App.-Fort Worth 1998, no pet.) (final judgment *extinguishes* the right to bring other suits on the transaction); *Lentworth v. Trahan,* 981 S.W.2d 720, 723 (Tex.App.-Houston [1st Dist.] 1998, no pet.) (dismissal with prejudice would act as a *bar* to any lawsuit arising out of same facts).

■ In this case, Dresser argues that the issue of the underlying coverage being exhausted by covered claims was resolved by the agreed judgment in the previous litigation between these parties. It is true that issue was before the court in the previous case. It is also true that a judgment based on a settlement is final and may be used to preclude causes of action concerning the same subject matter as was in the previous case. *Freeman v. Cherokee Water Co.,* 11 S.W.3d 480 (Tex.App.-Texarkana 2000, no pet.). However, Dresser does not want this issue precluded in this case, but rather argues that the issue has been conclusively found in its favor. Dresser filed this action for a declaration concerning that very issue. Dresser must prove the exhaustion of underlying insurance as a condition precedent to recovery against the excess carrier. *Utica Nat'l Ins. Co.,* 812 S.W.2d at 662. What Dresser is in essence arguing is that the issue of exhaustion of underlying coverage was found in its favor in the prior case and serves to establish that issue in this case. Dresser is not urging the issue should be precluded or prevented entirely in this case. If all use of such issue is precluded, Dresser's declaratory judgment action proof would be incomplete and fail.

If the court in the previous action had resolved this issue in Dresser's favor, the doctrine of collateral estoppel would authorize the use of such determination offensively by Dresser. However, since there was no resolution of this issue, it remains for consideration in this matter.

Dresser argues that the decision of the excess carrier to settle the previous case "conclusively established the issue of whether the Parker & Parsley Claim was a covered claim." *Freeman,* 11 S.W.3d at 483–84.

The *Freeman* opinion states that an agreed judgment based on a dismissal in settlement is a judgment on the merits and is conclusive, not only on matters actually raised and litigated, but it is also conclusive on every other matter that could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation. *Id.* at 483.

We agree that, if a prior judgment fulfills the requirements of res judicata, such judgment is conclusive—it bars further litigation of such claim. But that is not to say such judgment conclusively establishes an individual issue in one party's favor. If res judicata should apply here, the subject matter would be extinguished. It could not be pursued by either party. We do not find that the doctrine of res judicata applies to the unresolved issue of whether the Parker and Parsley claims were covered claims.

In the first case between these parties, the transaction arose from the claims of

Parker and Parsley from oil well servicing. The relevant issues in that case were (1) whether the claims were within the underlying policy coverage; and (2) had the underlying insurance carriers paid or become obligated to pay all of their coverage? If both these issues were proven, Dresser established a cause of action against the excess carrier.

In the instant litigation, Dresser asserts it has incurred other claims for asbestos exposure. It likewise alleges that the asbestos claims are covered losses and that, because the underlying insurance carriers have exhausted their coverage, it can reach the coverage provided by the excess carrier.

To determine if the subject matter in the previous suit and this one are the same for res judicata purposes requires an examination of the factual basis of the claim or claims in the prior litigation and an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action. *Barr*, 837 S.W.2d at 630. The main concern is whether the cases share the same nucleus of operative facts. *Kenneco Energy, Inc. v. Johnson & Higgins of Tex., Inc.*, 921 S.W.2d 254, 260 (Tex.App.-Houston [1st Dist.] ), *modified on other grounds & remanded*, 962 S.W.2d 507 (Tex.1998).

*Barr* quoted Restatement of Judgments Section 24(1) that a "transaction" is not equivalent to a sequence of events; however, the determination is to be made pragmatically "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Barr*, 837 S.W.2d at 631.

A "claim" is defined as "the assertion of an existing right; any right to payment or to an equitable remedy." BLACK'S LAW DICTIONARY 240 (7th ed.1999); *see Vacek Group, Inc. v. Clark*, 95 S.W.3d 439, 445 (Tex.App.-Houston [1st Dist.] 2002, no pet. h.).

■ In both the Parker and Parsley litigation and in the present litigation, Dresser had one common issue that had to be proven in order to reach the excess carrier's policy: had the underlying insurance coverage been exhausted? In order to do so, Dresser also had to prove in each case that such losses were covered under the policies. In one scenario the facts of coverage involved well servicing, and in the other it involved asbestos exposure.

We find these facts do not invoke the doctrine of res judicata because the causes of action originate from different facts and different transactions. Clearly, the requirements of collateral estoppel have not been established, because the issue of exhaustion of the underlying policies was not fully and fairly litigated to a conclusion, but was settled.

In analyzing the factual basis for the underlying claim and the gist of the complaint, we find that the claim or cause of action that prompted this action—an asbestos claim—does not arise out of the Parker and Parsley litigation. It does not relate to or concern Parker and Parsley. The outcome of the Parker and Parsley litigation can only provide proof of a precursor condition that must be met in order to reach the excess carrier's insurance policies.

Therefore, we conclude Dresser is not entitled to rendition of judgment in its favor on this issue and the trial court did not err by declining to render summary judgment in favor of Dresser.

*Release*

We now turn to the issue raised by the excess carrier in its first motion for sum-

mary judgment, which was denied by the trial court. The excess carrier argues Dresser has released its right to claim that the Parker and Parsley payments served to exhaust the primary carriers' insurance. When the previous litigation was settled, Dresser signed a release. By its terms, Dresser released the insurers from

> [A]ll claims and other causes of action it may ever have or has had, whether or not known or asserted, against Underwriters in any way connected with, related to, concerning or arising out of the Lawsuits or the fracturing or otherwise servicing of wells in the State of Texas by Dresser (or its subsidiaries) from 1980 through 1988.

The "Lawsuits" were defined as the Parker and Parsley litigation.

In support of their position that Dresser released any possible claims, the insurers rely heavily on the most recent pronouncement from the Texas Supreme Court on releases. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 697–98 (Tex.2000). *Keck* reviewed a release that contained language releasing a party from "all demands, claims or causes of action of any kind whatsoever, statutory, at common law or otherwise, now existing or that might arise hereafter, directly or indirectly attributable to the rendition [of] professional legal services by KMC to Granada between June 1, 1988 and April 1, 1992." *Id.* at 696. The court found this to be an adequate description and allowed the release to stand.

The excess carrier argues that the release in this case is a broad-form release sanctioned by *Keck* and should be effective here. *See id.* at 699.[1]

The facts in *Keck* showed that Granada owed KMC a substantial amount for legal services. In exchange for KMC's promise to forgive unpaid fees, Granada signed the release quoted above. A suit was filed against KMC alleging legal malpractice in the defense of Granada. The plaintiff in *Keck* argued the release only applied to unpaid legal fees which were mentioned in the recitals of the agreement. The court of appeals read the "unpaid fees" mentioned in the recitals as an implied limitation on the claims released. The Texas Supreme Court found the release was effective as to malpractice claims, not just unpaid fees. It further stated its decision in *Brady* did not control the construction of this release. The *Keck* release was broader than the one in *Brady*. *Brady* did not forbid a broad-form release, but held the release must "mention" the claim in order to be effective. The court concluded the release was effective to forgive all claims against KMC for malpractice during the period covered in the release. The release specifically mentions "claims ... attributed to ... legal services." The term "legal services" is clear. Such a release comports with *Brady* by mentioning the matter released.

■ The excess carrier argues this release bars Dresser from using the Parker and Parsley claim as an element or necessary predicate to this claim. The release limits itself to "all claims and other causes of action ... connected with, related to, concerning ... arising out of the Lawsuits or the fracturing...." The lawsuits are defined as the Parker and Parsley litigation, which involved fracturing wells. The present litigation arises out of asbestos

---

1. In reaching this decision, the Texas Supreme Court expanded its earlier holding in *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931 (Tex.1991), which required that general categorical release clauses should be narrowly construed and that, in order to effectively release a claim, the releasing instrument must "mention" the claim to be released.

claims. None of this claim arises from or is related to fracturing of wells.

We have determined that the claim or cause of action in the previous litigation is a distinct one from that which prompted the present litigation. In the prior litigation, the claim was for indemnity as a result of well servicing. In the present case, the underlying claim for indemnity arises from asbestos claims. It is true that both cases involve the same factual question: the exhaustion of the underlying policies, but that is a condition precedent to recovery on the policy and an issue that was not litigated, not a claim or cause of action. We hold the release signed in the previous litigation does not bar these asbestos-originating claims.

Furthermore, the release does not meet the *Brady* requirement to "mention" the claim to be released.

*The Summary Judgment*

█ When the trial court does not state the specific grounds on which it granted summary judgment, we will affirm if any of the theories advanced is meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Alvarado v. Wingfoot Enters.*, 53 S.W.3d 720, 723 (Tex. App.-Houston [1st Dist.] 2001, pet. granted). This summary judgment, however, was granted on the specific ground that the Parker and Parsley claims were not covered losses and could not exhaust the underlying limits of insurance coverage.

█ The insurers argue they have conclusively shown coverage cannot attach because the underlying claim against Parker and Parsley was a fraud claim, and under the admitted terms of the insurance contract, fraud is not covered. The insurers' position is based on the "occurrence" language found in the contract. It provides that an occurrence is covered and defines that term as something neither expected nor intended from the standpoint of the insured. Fraud is an intentional tort and does not constitute an "occurrence."[2] *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex.App.-Houston [1st Dist.] 1990, writ denied).

The question is whether the trial court was correctly able to determine as a matter of law that the Parker and Parsley claim was not a covered loss. As we stated in *Utica*,

Whether an insurer in a liability policy is obligated to defend the insured is a question of law to be decided by the court. *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 735 (Tex.App.-Fort Worth 1996, writ denied). In determining whether the insurer is obligated to defend the insured, we use the eight corners rule. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). The eight corners rule compares the provisions within the four corners of the policy with the factual allegations contained within the four corners of the plaintiff's pleadings to determine whether any claim alleged in the pleadings is within the coverage of the policy. *Nat'l Union*

---

**2.** "Occurrence" means

[A]n accident or event, including continuous or repeated exposure to conditions, which results in Personal Injury, Property Damage, Malpractice Injury, Advertising Liability and/or Employee Benefits injury during the policy period neither expected nor intended from the standpoint of the insured (Personal Injury or Property Damage committed to prevent or eliminate danger or to protect person(s) or property shall be deemed neither expected nor intended from the standpoint of the insured), and providing that all loss covered under this policy arising out of exposure to substantially the same general conditions shall be considered as arising out of one occurrence; . . . .

*Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d at 141.

*Utica Lloyd's of Tex. v. Sitech Eng'g Corp.,* 38 S.W.3d 260, 263 (Tex.App.-Texarkana 2001, no pet.). This is not, of course, necessarily equivalent to determining that an insurance claim will ultimately be bound to indemnify, but only that there are sufficient allegations to require an insurer to defend the claim.

■ The trial court held that the Parker and Parsley claims were not covered losses under the policy and therefore were incapable of exhausting the underlying coverage, leading to the conclusion that the excess carrier was not liable. The duty to defend and duty to indemnify are separate issues. *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997). An insurer may have a duty to defend but, eventually, no duty to indemnify. For example, a plaintiff pleading both negligent and intentional conduct may trigger an insurer's duty to defend, but a finding the insured acted intentionally and not negligently may negate the insurer's duty to indemnify. *Id.* Under that scenario, an insurer is not obligated to pay a liability claim until its insured has been adjudicated legally responsible for a covered claim. *See S. County Mut. Ins. Co. v. Ochoa,* 19 S.W.3d 452, 460 (Tex. App.-Corpus Christi 2000, no pet.).

*Griffin* held that a duty to indemnify may be determined if the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify. *Griffin,* 955 S.W.2d at 84 (a drive-by shooting can never be transformed into negligence).

■ When deciding a duty to defend issue, the court must look at the allegations of the petition and determine if coverage exists. Even if this Court could only look at the allegations in this case to

determine the issues before us, there are sufficient allegations in the petition to raise material issues of fact. Specifically, the petition in which the Parker and Parsley claims were asserted against Dresser alleged that Dresser was negligent for, among other things, employing, retaining, and supervising employees. This is very similar to the allegations in *King v. Dallas Fire Insurance Co.,* 85 S.W.3d 185 (Tex. 2002), where the plaintiff alleged a defendant employer was negligent in supervising an employee that committed an intentional tort.

■ However, the court is not constrained to look only at the four corners of the petition when determining indemnity. The duty to indemnify is determined by the actual facts surrounding the case. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821 (Tex.1997). As Dresser is alleging that all the prerequisites to the excess carrier's liability have been met, resolution of that issue must depend on the actual facts from the prior litigation. In this case, much evidence is available to assist the court in determining whether the Parker and Parsley claims were covered by the policies. At one stage of the Parker and Parsley proceedings, a jury trial was conducted and answers were returned finding Dresser liable on both fraud and negligence theories.

■ There is no disagreement about whether the primary carriers tendered the full amounts of their policy limits to settle the Parker and Parsley claims. The excess carrier's insurance contracts contain language stating that:

It is expressly agreed that liability shall attach to the Underwriters only after the Underlying Insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability respect [sic] amounts cov-

ered by underlying Policy/ies for limits as set out in the schedule attached to this Policy and the Underwriters shall then be liable to pay only the excess thereof up to . . . .

The fact that each one of the (solvent) primary insurers settled for the full amount of their coverages is summary judgment evidence that at least raises a fact issue that primary insurance coverage was exhausted. The additional fact that the excess carrier paid part of its excess coverage to Dresser for those same claims is further support for Dresser's allegation that the primary coverage was exhausted for covered claims. All of those matters are set out specifically in Dresser's petition seeking declaratory relief. For those reasons, even if we agreed fully with the insurer's analysis of the contract language, we could not agree the trial court correctly concluded as a matter of law the primary policies had not been exhausted.

Further, the multitude of documents presented by insurers show that the insurers are now taking the position that, in 1994, they were not legally obligated to Dresser—even though they did pay $5.5 million on the claim. The letters and proposed agreements that were circulating during the process of settlement show a difference of opinion about whether underlying coverage was exhausted. In addition, even though the underlying Parker and Parsley pleadings were mainly directed at allegations their injuries were caused by local managers with the full assistance and knowledge of upper echelon management, they also made alternative allegations their injuries were caused by the negligence of management.

We find that fact issues exist with regard to coverage and exhaustion of the primary insurance policies.

The insurers further ask that, on remand, we give specific instructions to the trial court to apportion the Parker and Parsley settlement between covered and uncovered claims. This issue was not raised in a motion for summary judgment and cannot now be considered. TEX.R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993).

The insurer also urges this Court, in the event of remand, to authorize presentation of additional affirmative offenses. We are confident all proper issues will be addressed by the trial court.

We reverse the summary judgment and remand to the trial court for further proceedings consistent with this opinion.