In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00004-CV


______________________________




DARRELL MCKNIGHT AND MICHAEL PALMER, Appellants



V.



AMERICAN MERCURY INSURANCE COMPANY, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 2007-612-A




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 Darrell McKnight and Michael Palmer made a claim with their insurer, American Mercury
Insurance Company (American Mercury), seeking payment for damage to their metal building
resulting from a hailstorm in March of 2000. Initially, American Mercury issued a check to pay for
the damage assessed. When McKnight and Palmer, dissatisfied with the amount paid, refused to
accept the check and, instead, filed suit in Upshur County (Upshur County litigation), American
Mercury reinvestigated the claim. Upon its reinvestigation, American Mercury discovered that the
damage, if there ever was any, had been cured by natural processes. So, during the Upshur County
litigation, American Mercury maintained its position that it owed nothing to McKnight and Palmer
because there was no remaining discernible damage to the building.

 Several years later and following a trial to an Upshur County jury, the trial court entered
judgment that McKnight and Palmer take nothing. McKnight and Palmer then tried to deposit the
check that American Mercury had initially issued several years earlier. Not surprisingly, American
Mercury refused to honor that check. McKnight and Palmer then sued again, this time in Gregg
County (1) (Gregg County litigation). American Mercury moved for summary judgment on the ground
that the doctrine of res judicata barred the Gregg County litigation. The trial court agreed and
granted summary judgment that McKnight and Palmer take nothing. They now appeal that judgment
to this Court. We first discuss the details and factual allegations of both suits.

I. FACTUAL AND PROCEDURAL HISTORY

 A. Upshur County Litigation

 Again, before either suit was filed, American Mercury tendered a check in the amount of
$24,055.70. (2) McKnight and Palmer disagreed with the amount of the check and filed suit in Upshur
County seeking damages. See McKnight v. Am. Mercury Ins. Co., cause number 401-02. In their
petition, filed in June 2002, McKnight and Palmer described the case as one "involving, breach of
contract, violation of the Texas Deceptive Trade Practices Act, and violations of the Texas Insurance
Code." They alleged that American Mercury "failed to provide full coverage for certain damage"
and that, as a result, they "herein [sue] for payment of all property damage covered under the terms
of this policy of insurance." 

 Attached to American Mercury's designation of expert witnesses, filed February 24, 2005,
are three reports important to the analysis of the Upshur County litigation: (1) a report dated
November 10, 2003, following a reinspection by the claims service that originally inspected the
building, (2) a follow-up report dated November 12, 2003, summarizing the November 10 report's
findings, and (3) an engineering firm's report dated February 14, 2005. The November 10
reinspection report included the findings following an examination of the structure:

 Our inspection of the building found no damage to the exterior metal walls related
to hail. We also gained access to the roof and verified that no damage to this metal
structure was found. We did find areas where hail had left marks on the roof,
however no dents, dings, or impressions from hail were found. As you can tell in our
photographs, there are areas where hail appears to have struck the roof and left marks
on the chalking or acid build up on the roof. As you can tell in our photographs,
these areas are easily wiped away and have not reduced the life expectancy of this
roof. These marking[s] are sometimes misconstrued as being hail damage. The
chalking or acidation of this roof is due to weather and can be found on all metal
structures. Once again, we found no evidence of hail damage to the exterior walls
or the roof of this building.


The follow-up report explained that the original inspection in 2000 did show hail damage and
concluded that it was "possible that due to heat and severe weather conditions in East Texas that
these dings are no longer visible." The report continued, suggesting that the previously visible dings
"may have potential [sic] cured themselves through time and weather." It plainly stated that "there
is no visible damage evident during our recent inspection." 

 The engineering firm's report detailed the property's characteristics and outlined the process
by which it investigated the building and the claim of hail damage. First, the report noted that the
company maintains a national database of hailstone reports in excess of 3/4 inch using government
records. Using this database, the firm concluded that there was no hail reported within a three-mile
radius of the building on March 29, 2000, the date McKnight and Palmer allege as the date of the
damaging storm. In fact, according to the database, no hail was reported within a three-mile radius
of the building in the years 2000, 2001, and 2003. Going further, the report noted that no hail was
reported within a six-mile radius on the date at issue. The firm conceded that the lack of reports does
not necessarily "mean that hail did not fall in a particular location." 

 On ground level, the firm reported "no evidence of hail impact, spatter marks, or dents in the
metal siding." Regarding the roof, the report noted that some hail spatter marks had removed the
surface grime of the metal roof, but there were "no observable dents associated with the spatter
marks" and the impact had not removed the paint coating. The firm reported no evidence of hail
damage to the trim or other features of the metal building. The firm discussed in detail its findings,
confirmed the structural integrity of the building, and noted as well that even the visible spatter
marks that had removed the surface grime on the roof had probably been sustained in the most recent
hailstorm since "[s]patter marks fade over time, usually six months to a year." So, the firm, too,
observed no damage to the metal building. Even the spatter marks, which here, the report suggests,
were cosmetic, temporary blemishes, were not likely the result of the hailstorm McKnight and
Palmer allege happened in March 2000. Again, these three reports were filed along with American
Mercury's designation of expert witnesses on February 24, 2005. 

 Additionally, on January 31, 2006, American Mercury responded with the following in its
supplemental response to a request for disclosure:

 Defendant American Mercury Insurance Company denies the allegations of the
Plaintiffs' petition. The Plaintiffs have failed to state any specific violation of the
Texas Insurance Code or Deceptive Trade Practices Act which Plaintiffs allege have
been violated by Defendant, so Defendant cannot respond specifically other than to
state that Defendant denies it committed any violation. Defendant adjusted the claim
and sent a check based on its adjustment of the claim that was refused by Plaintiffs. 
Defendant's position is that the original adjustor either misadjusted the extent of the
damage or that any damage to the roof was "repaired" by physical processes
described by Defendant's expert Robert Fleishmann. Defendant further alleges that
Plaintiff Michael Palmer is not a proper party to this cause of action. Plaintiffs have
failed to comply with the conditions of the insurance policy in question in bringing
this cause of action. Plaintiffs have no damages because the building in question was
sold to Dr. Jody Syring in an arm's length transaction. Dr. Syring was not told of and
was not aware of any damage to the building as alleged by Plaintiffs.


American Mercury relied on the reinspection and engineering reports.

 On April 13, 2006, the Upshur County jury answered the following question in the negative: 
"Did American Mercury Insurance Company fail to comply with the insurance agreement?" (3) The
trial court signed a take-nothing judgment on June 5, 2006. 

 B. Gregg County Litigation

 After the Upshur County litigation, McKnight and Palmer attempted to deposit the check
issued several years earlier, only to discover that American Mercury refused payment on the check. 
As explained, during the course of the Upshur County litigation American Mercury maintained that
further investigation revealed that there was no hail damage to the property and, thus, nothing owed
on the claim.

 In their petition filed on March 15, 2007, (4) in the Gregg County litigation, McKnight and
Palmer alleged that American Mercury breached the insurance contract by refusing to honor the
check issued years earlier on the claim prior to the Upshur County litigation. They also alleged that
American Mercury's refusal breached its duty of good faith and fair dealing. They sought to recover
the amount of the check ($24,055.70) and exemplary damages. 

 McKnight and Palmer now take the position that the Upshur County suit is distinguishable
from the Gregg County suit because, in Upshur County, the two claimed that American Mercury
breached the insurance agreement by paying an insufficient amount on the claim whereas, in Gregg
County, the two claimed that American Mercury breached the insurance agreement by refusing to
honor the check initially issued on the claim. In other words, McKnight and Palmer contend that
they seek different damages in this case than they did in the Upshur County suit. American Mercury,
of course, disagrees with this characterization and successfully argued to the trial court its position
that the Gregg County litigation was barred by the doctrine of res judicata. 

II. APPLICABLE LAW: DOCTRINE OF RES JUDICATA

 Essentially, the doctrine of res judicata, or claim preclusion, (5) gives a plaintiff one bite at the
cause of action apple. Weiman v. Addicks-Fairbanks Road Sand Co., 846 S.W.2d 414, 418 (Tex.
App.--Houston [14th Dist.] 1992, writ denied). If the defendant wins the original suit, then, the
plaintiff is barred from bringing another action on the claims actually litigated in the action, as well
as on claims that could have been litigated in the original action. See Barr v. Resolution Trust Corp.,
837 S.W.2d 627, 628 (Tex. 1992); Fiallos v. Pagan-Lewis Motors, Inc., 147 S.W.3d 578, 584 (Tex.
App.--Corpus Christi 2004, pet. denied); Dresser Indus., Inc. v. Underwriters at Lloyd's, London,
106 S.W.3d 767, 770 (Tex. App.--Texarkana 2003, pet. denied). Thus, a party may not pursue a
claim determined by the final judgment of a court of competent jurisdiction in a prior suit as a
ground of recovery in a later suit against the same parties. Igal v. Brightstar Info. Tech. Group, Inc.,
No. 04-0931, 2008 Tex. LEXIS 422, at *18 (Tex. May 2, 2008); Tex. Water Rights Comm'n v. Crow
Iron Works, 582 S.W.2d 768, 771-72 (Tex. 1979). In short, res judicata precludes parties from
relitigating claims that have been finally adjudicated by a competent tribunal. Igal, 2008 Tex.
LEXIS 422, at *18; Barr, 837 S.W.2d at 628.

 To successfully assert the affirmative defense of res judicata, a defendant must prove the
following well-established elements: (1) a prior final judgment on the merits by a court of competent
jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the
same claims as were raised or could have been raised in the first action. See Igal, 2008 Tex. LEXIS
422, at *17-18; Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 449 (Tex. 2007); Amstadt v.
United States Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996); Crow Iron Works, 582 S.W.2d at
771-72; Cherokee Water Co. v. Freeman, 145 S.W.3d 809, 812-13 (Tex. App.--Texarkana 2004,
pet. denied).

 Here, McKnight and Palmer challenge only the third element, contending that the Gregg
County litigation involves different claims than those advanced in the Upshur County litigation. 
Since the case comes to us in summary judgment posture and since res judicata is an affirmative
defense on which the defendant bears the burden of proof, we will review the record to determine
whether American Mercury conclusively proved as a matter of law that the claims in the Gregg
County litigation were barred by the doctrine of res judicata. See Tex. R. Civ. P. 166a(c); Shah v.
Moss, 67 S.W.3d 836, 842 (Tex. 2001).

III. DISCUSSION

 McKnight and Palmer's claims that American Mercury breached the insurance agreement or
its duty of good faith and fair dealing by refusing payment on McKnight and Palmer's insurance
claim are claims that have been determined in the Upshur County litigation. The record shows us
that, as early as November 2003, American Mercury had taken the position that there was no damage
to the building and, therefore, it owed nothing on the claim. At the very latest, McKnight and Palmer
learned of this position in February 2005 when American Mercury filed its designation of expert
witnesses in which it explained that the designated experts' testimony would reflect "no evidence of
a hailstorm in 2000 having produced any current hail damage to the building." American Mercury
again made its position clear in its supplemental response to a request for disclosure, plainly stating
its position "that the original adjustor either misadjusted the extent of the damage or that any damage
to the roof was 'repaired' by physical processes described [in the attached expert's report]." 

 So, by the time trial was held in April 2006, it was clear that American Mercury maintained
its position that it owed nothing on the claim. Included in the evidence put before the Upshur
County jury were the reinspection and engineering reports that indicated no damage to the building. 
The jury's answer, then, that American Mercury did not breach the insurance contract would have
been made on that basis: that by refusing payment at all on the claim, American Mercury did not
breach the agreement. It follows, then, that the judgment stands for the proposition that American
Mercury does not owe the $24,055.70 previously issued on the claim and refused by McKnight and
Palmer. McKnight and Palmer's post-Upshur County litigation position that American Mercury
breached the insurance agreement by refusing payment on the check, then, has already been litigated
and was determined when the Upshur County jury determined that American Mercury's refusal to
pay any amount on the claim was not a breach of the insurance agreement. Although the Gregg
County suit attempts to shift the focus onto the refusal to honor a check, even McKnight and
Palmer's own pleadings show that the check was originally issued in connection with the insurance
claim. And the Upshur County litigation resulted in a judgment that American Mercury did not owe
McKnight and Palmer any amount of money on that insurance claim. 

 Based on this reading of the record, we conclude that the summary judgment evidence
establishes as a matter of law that the claims that American Mercury breached its contract and its
duty of good faith and fair dealing by refusing payment on the 2000 insurance claim were litigated
and that relitigation of these issues, even cast under a different legal theory, is barred. We overrule
McKnight and Palmer's point of error and affirm the trial court's judgment. 




 Jack Carter

 Justice


Date Submitted: May 19, 2008

Date Decided: September 24, 2008


1. This second suit was originally filed in Upshur County as well under cause number 690-06. 
American Mercury moved to transfer venue based on the fact that the property at issue was actually
located in Gregg County, a fact that McKnight and Palmer later conceded. Although the order is not
included in the our record, the parties refer to an agreed order by which the cause was indeed
transferred to Gregg County under cause number 2007-612-A.
2. Although the date of the check is not clear from the record before us, we note that the
estimate upon which American Mercury issued the check was completed on August 12, 2000. 
3. As instructed, the jury did not answer any of the other five questions subsequent to its
negative answer to this question. 
4. McKnight and Palmer originally filed their petition in Upshur County on October 2, 2006. 
Following the previously-noted transfer, the petition was filed in Gregg County on March 15, 2007. 
5. Although American Mercury's motion for summary judgment and the briefs to this Court
limit their discussion to res judicata generally, we note the distinctions between the related doctrines
of res judicata, also referred to as claim preclusion and of collateral estoppel, also known as issue
preclusion. Collateral estoppel, or issue preclusion, is more narrow than res judicata in that it only
precludes the relitigation of identical issues of facts or law that were actually litigated and essential
to the judgment in a prior suit. Van Dyke v. Boswell, O'Toole, Davis & Pickering, 697 S.W.2d 381,
384 (Tex. 1985). Once an actually litigated and essential issue is determined, that issue is conclusive
in a subsequent action between the same parties. See id.; Wilhite v. Adams, 640 S.W.2d 875, 876
(Tex. 1982). Thus, unlike the broader res judicata doctrine, collateral estoppel analysis does not
focus on what could have been litigated, but only on what was actually litigated and essential to the
judgment. Van Dyke, 697 S.W.2d at 384.



 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-049-CV%20Langham%20v.%20Geisendorff%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00049-CV

                                                ______________________________

 

 

          DR. MARIE LANGHAM, INDEPENDENT EXECUTRIX OF
THE 

ESTATE OF MARY MARIE
CARMICHAEL, DECEASED,

AND GARY CARMICHAEL,
Appellants

 

                                                                V.

 

                            FREDERIC W. GEISENDORFF AND WIFE, 

BILLIE G. GEISENDORFF,
Appellees

 

 

                                                                                                  


 

 

                                       On Appeal from the 294th
Judicial District Court

                                                         Van
Zandt County, Texas

                                                          Trial Court
No. 07-00002

 

                                                                                                  


 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            We withdraw
our opinion of May 9, 2011, dismissing the appeal of Marie Langham in our cause
number 06-11-00049-CV and issue this new opinion disposing of the appeal, to
which Gary Carmichael has now been added as an appellant.  We issue this new opinion because, after the
clerks record was filed and our opinion was issued, a co-defendant, Gary
Carmichael, chose to file his notice of appeal on the 89th day following the
signing of the judgment.  

            We have
reviewed the record and recognize that Carmichael is in precisely the same
position as Langhamattempting to appeal from the grant of a motion for new
trial.  We therefore file his notice of
appeal in cause number 06-11-00049-CV. 
We further recognize that counsel for Carmichael has been on the mailing
list for this appeal since its inception, and has thus been notified about each
action taken in this case.

            Colonel Kent
Scott Coker and Dr. Marie Langham, independent executrix of the Estate of Mary
Marie Carmichael, deceased, and Gary Carmichael have filed notices of appeal
from a final judgment signed by the trial court on February 10, 2011.[1]  The notices of appeal were filed March 3,
2011, and thus would be timely from a judgment signed on that date. 

            The
underlying lawsuit was brought by Frederic W. Geisendorff and wife, Billie G.
Geisendorff, against Coker, Carmichael, and Langham.  The lawsuit appears as a
trespass-to-try-title action against Coker and an action seeking a declaratory
judgment against Carmichael and Langham to declare the location of boundaries
to the property and the ownership thereof. 
The jury found all issues in the defendants favor; the verdict was
filed March 5, 2010.  

            Coker filed
a motion for entry of judgment May 24, 2010. 
A document entitled Judgment was ultimately signed nearly nine months
later on February 10, 2011.  On April 26,
2010 (well before the signing of any judgment), the plaintiffs below (the
Geisendorffs), filed a motion for judgment notwithstanding the verdict and for
a partial new trial on the boundaries. 
The judgment eventually signed stated that the evidence was insufficient
to support the verdict as to the issues involving Coker, and rendered a
judgment notwithstanding the verdict in favor of the Geisendorffs against
Coker.  It addressed the Geisendorffs
claims against Carmichael and Langham, found that the evidence was
insufficient, and ordered a new trial between the Geisendorffs and defendants
Carmichael and Langham.

            On April 11,
2011, the trial court severed the portion of the case disposing of the
Geisendorffs claims against Coker from the portion of the case seeking
declaratory judgment against Langham and Carmichael and assigned that suit
against Langham and Carmichael a new cause number.  

            Although the
notices of appeal had been previously filed, the trial court severed the
case  while the trial court retained
plenary power over its judgment. 
Accordingly, two separate cases now exist where previously there was
only one when the notices of appeal were filed by the respective
appellants.  

            To reflect
this new state of affairs, this Court has by separate order severed the appeal
in our cause number 06-11-00040-CV into two appeals, retaining Cokers appeal
under the current cause number, and assigning the appeal by Langham (to which
Carmichael has now been added as an appellant) to cause number 06-11-00049-CV.

            It is
apparent that the judgment signed February 11, 2011, is likewise now, by virtue
of the severance ordered by the trial court, itself also divided into two
portionsone granting a judgment notwithstanding the verdict to the
Geisendorffs, and appealed by Coker, and the second portion granting the
Geisendorffs a new trial as to Carmichael and Langham.   

            In relation
to this severed appeal, the Geisendorffs, as appellees, have filed a motion
asking this Court to dismiss Langhams appeal for want of jurisdiction, arguing
that the document appealed from and the issues raised by Langham would be from
grants of a partial new trial to appelleeswhich is an unappealable order.  

            The
procedure here was unorthodox, as a new trial generally is granted only after
there is a judgment rendered from which to grant the new trial.  However, it is axiomatic that a grant of a
new trial is not appealable.   

            An
order granting a new trial within the plenary power period of the trial court
is not subject to review either by direct appeal from that order, or from a
final judgment rendered after further proceedings in the trial court.  Cummins
v. Paisan Constr. Co., 682 S.W.2d
235, 236 (Tex. 1984); see also Wilkins v.
Methodist Health Care Sys., 160 S.W.3d 559, 563 (Tex. 2005).[2]  

            Further,
under the current state of the record, there is no final judgment between
Langham and Carmichael and the Geisendorffs from which an appeal (however
pointless it would be in light of the grant of a new trial) could be taken.[3]  

            We,
therefore, dismiss for want of jurisdiction the appeal in cause number
06-11-00049-CV, Langham and Carmichael v.
Geisendorff.

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          May
6, 2011

Date Decided:             May
20, 2011

 

 

 

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.

 





[2]Appellant
argues that the order granting a new trial is void, which might subject it to
mandamus attack, but provides no authority supporting the argument.  

 





[3]A
party may normally appeal only from final orders or judgments.  Lehmann
v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2001); In re Estate of Boren, 268
S.W.3d 841 (Tex. App.Texarkana 2008, pet denied).  The Texas Legislature has, however,
authorized the appeal of several types of interlocutory orders, none of which
is at issue here.  See, e.g., Tex. Civ. Prac. & Rem. Code Ann. §
15.003 (Vernon Supp. 2010), § 51.014 (Vernon 2008), § 171.098 (Vernon 2011); Tex. Govt
Code Ann. § 1205.068 (Vernon 2000). 
It is fundamental error for an appellate court to assume jurisdiction
over an interlocutory appeal that is not expressly authorized by statute.  See New
York Underwriters Ins. Co. v. Sanchez, 799 S.W.2d 677, 679 (Tex. 1990); Jani-King of Memphis, Inc. v. Yates, 965
S.W.2d 665, 66667 (Tex. App.Houston [14th Dist.] 1998, no pet.).