

# IN THE
# TENTH COURT OF APPEALS

## No. 10-17-00139-CV

**COLETTE SAVAGE,**

Appellant

v.

**MARK SAVAGE, TRUSTEE AND FIDUCIARY,**

Appellee

**From the 66th District Court
Hill County, Texas
Trial Court No. 52,939**

## MEMORANDUM OPINION

In five issues, appellant, Colette Savage, challenges two summary judgments

entered in favor of appellee, Mark Savage. Because we overrule all of Colette's issues,

we affirm the judgments of the trial court.[1]

---

[1] At the outset, we address Mark's second motion to extend time to file his appellee's brief, which was filed simultaneously with his appellee's brief. Colette has objected to this motion. In analyzing Mark's motion, we first recognize that Colette's appellant's brief was originally due within thirty days of March 27, 2018—the date when the Reporter's Record was filed. *See* TEX. R. APP. P. 38.6(a). We granted Colette multiple extensions that amounted to an additional seventy-five days from the original due date and considered her appellant's brief timely filed on July 9, 2018. The number of additional days sought by Mark

## I. BACKGROUND

In 1993, William and Beatrice Savage established a family trust to hold assets. This trust was amended several times in the succeeding years. In early 2013, Mark was appointed as attorney-in-fact for Beatrice, through a power of attorney. In the spring of 2014, Mark also had a medical power of attorney for Beatrice.

Although William and Beatrice had wills to dispose of their assets, both of them generally provided that their assets would pass to the family trust at the time of their deaths. The trust documents provided that the trust assets would be distributed to persons named as beneficiaries when the last of William or Beatrice passed. Mark and Colette were both named as beneficiaries to the trust, and the record reflects that Colette was the largest future recipient of the trust assets.

At the end of February 2014, after William had already died, Beatrice began suffering from a disabling health condition. Mark traveled from his home in Hubbard, Texas, to care for Beatrice, who lived in California. From March 2014 to May 2014, Mark actively managed Beatrice's affairs. However, by May 2014, other family members began

was thirty-three days from the original due date of August 8, 2018. Additionally, we note that this appeal was originally dismissed due to Colette's failure to timely pay for the Clerk's Record. *See Savage v. Savage*, No. 10-17-00139-CV, 2018 Tex. App. LEXIS 276 (Tex. App.—Waco Jan. 10, 2018, no pet.) (mem. op.). However, once Colette paid for the Clerk's Record, we reinstated the case. Keeping these facts in mind and considering the medical excuse provided by Mark's counsel, we believe that principles of fairness justify the granting of Mark's second motion to extend time to file his appellee's brief. As such, we will consider his appellee's brief, as well as Colette's appellant's brief and reply briefs, in analyzing this appeal.

Additionally, we must also note that, in light of our disposition, we dismiss all of Colette's remaining motions as moot, especially considering the fact that many of them seek an emergency disposition of this case in her favor without affording Mark the opportunity to respond.

disputing the trust documents in California. As a result of the disputes, a court in California appointed R. Michael Lydon as the successor trustee of the family trust and suspended Mark's powers of attorney.

In any event, Mark has alleged that the disputes over the trust documents were expensive and time-consuming and that he carried a substantial financial and personal burden in defending the litigation for both his and Colette's benefit. Recognizing the substantial burdens and seeking to protect her inheritance, Colette made several agreements with Mark. On June 3, 2014, Colette signed a $240,000 promissory note in favor of Mark in California. She signed another $240,000 promissory note in favor of Mark on June 26, 2014, in California. It is uncontroverted that the second California note took the place of the first California note. However, neither of these notes are the subject of this appeal.

Subsequently, on August 12, 2014, Beatrice died. Colette signed a third $240,000 promissory note in favor of Mark on August 22, 2014 (hereinafter the "Texas Note"). This note, which is the subject of this appeal, indicated that both she and Mark lived in Hubbard, Texas, and that the note was secured by a deed of trust involving six tracts of land located in Hubbard.

Thereafter, Mark received some reimbursement for expenses from the trust. He asserts that he was only allowed to recover a part of the expenses that he was seeking to recover from the trust. Nevertheless, with regard to the Texas Note, Mark received two

payments from Colette—one on October 8, 2015, for $5,000 and a second on October 27, 2015 for $2,063—and net proceeds of $9,001 from a January 5, 2016 foreclosure sale involving three of the six properties used as collateral for the Texas Note. In his affidavit in support of his traditional motion for summary judgment, Mark noted that the unpaid balance owed by Colette to him was $221,164.48 principal and $52,100.14 in interest as of August 26, 2016. Mark further stated that the note accrues interest at the rate of $109.07 per day for each day after August 26, 2016.

Colette failed to make any further payments on the Texas Note. On December 28, 2015, Colette, advancing pro se, filed suit in Hill County, Texas, complaining about the January 5, 2016 foreclosure sale, seeking a preliminary injunction, and asserting numerous causes of action for breach of contract, violations of the Texas Deceptive Trade Practices Act, and violations of various federal lending regulations, among other things. Mark responded by filing an answer and an original counterclaim seeking recovery on the Texas Note. Numerous additional documents were filed in the trial court. Among these documents were two motions for summary judgment filed by Mark. After reviewing the evidence submitted, the trial court ultimately granted both of Mark's summary-judgment motions.

In its first order, the trial court concluded that Mark "is entitled to recover a judgment against the Plaintiff [Colette] on the Promissory Note dated August 22, 2014 [the Texas Note] in the original principal amount of $240,000 . . . executed by Plaintiff and

payable to the order of Defendant." The trial court further stated that it made no ruling as to Colette's claims against Mark, "except to the extent the Plaintiff has alleged a defense to her obligation to pay the Note, that defense is denied." As a result of the first order, Mark was awarded $273,265.07 as the total principal and interest due at the date of judgment, as well as $43,309.43 in attorney's fees, additional attorney's fees for appeals, court costs, and post-judgment interest.

In its second order, the trial court reaffirmed its decision that Mark was entitled to recover on the Texas Note and denied all of Colette's remaining claims against Mark. This time, the trial court awarded Mark $290,497.27 as total principal and interest due through January 31, 2017, $77,546.93 in attorney's fees, additional attorney's fees for appeals, court costs, and post-judgment interest. This second order finally disposed of all pending claims and parties and was final for the purpose of appeal. Colette filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## II.    STANDARD OF REVIEW

A review of the record shows that Mark's first motion for summary judgment was filed on traditional grounds, and his second summary-judgment motion was filed on no-evidence grounds. Colette appears to challenge the trial court's granting of both summary-judgment motions.

Different standards of review apply to summary judgments granted on no-evidence and traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i). A no-evidence summary judgment is equivalent to a pre-trial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Once an appropriate no-evidence motion for summary judgment is filed, the non-movant, here Colette, must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment. *See* TEX. R. CIV. P. 166a(i). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We do not consider any evidence presented by the movant unless it creates a fact question. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004).

More than a scintilla exists when the evidence "raises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.) (op. on reh'g) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)). In determining whether the non-movant has met his burden, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

We review the trial court's grant of a traditional motion for summary judgment de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a traditional motion for summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). The movant bears the burden of proof in a traditional motion for summary judgment, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Grant*, 73 S.W.3d at 215. We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved its defense as a matter of law or if the movant has negated at least one essential element of the plaintiff's cause of action. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

### III.   ANALYSIS

### A.   Jurisdiction

In her first issue, Colette contends that the Texas trial court did not have jurisdiction because this dispute involved a California probate matter, and because a

California trial court purportedly determined that the promissory notes were "cancelled and extinguished." We disagree.

Subject-matter jurisdiction involves a court's power to hear a case or cause of action. *Tellez v. City of Socorro*, 226 S.W.3d 413, 413 (Tex. 2007) (per curiam). Subject-matter jurisdiction cannot be waived and may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.3d 440, 445 (Tex. 1993). However, a Texas court's jurisdiction is presumed until proven lacking by a contesting party. *See* TEX. R. CIV. P. 120a; *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 471 (Doggett, J., concurring & dissenting). Furthermore, "[w]here a party invokes the exercise of the jurisdiction within the court's general powers, he will not be thereafter heard or urged that the court was without jurisdiction to render the judgment so rendered." *Kohls v. Kohls*, 461 S.W.2d 455, 465 (Tex. Civ. App.—Corpus Christi 1970, writ ref'd n.r.e.) (citing *Moore v. Moore*, 430 S.W.2d 247, 250 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.))[2]; *Dutchover v. Dutchover*,

---

[2] The *Moore* Court stated the general rule regarding this issue as follows:

> The doctrine of invited error also precludes one who invokes the jurisdiction of a court from questioning the jurisdiction on review. And a party who induces the trial court to act on a particular assumption or theory is estopped from asserting in the appellate court that the theory was incorrect.

*Moore v. Moore*, 430 S.W.2d 247, 250 (Tex. Civ. App.—Dallas 1968, writ ref'd n.r.e.) (quoting 4 TEX.JUR.2d § 766, p. 276). The *Moore* Court further quoted the following from the principal case in support of this rule:

> But this irregularity, even though it be jurisdictional, will not avail plaintiffs in error. The plaintiffs in error having invoked the jurisdiction of the court to appoint a receiver of their property (the court having jurisdiction over the subject matter), they will not thereafter be permitted to question the validity of such appointment for the want of jurisdiction. . . . To permit one to invoke the exercise of jurisdiction within the general powers of a court and

334 S.W.2d 569, 573 (Tex. Civ. App.—El Paso 1960, no writ) ("The jurisdiction of the court was invoked by appellants; and, in such cases, it has been held that one who has invoked the court's exercise of a jurisdiction within the general powers of a court, may be estopped to raise the invalidity of the action.").

Here, the record demonstrates that Colette invoked the jurisdiction of the 66th District Court by filing suit in this matter. In light of the foregoing case law, Colette cannot invoke the jurisdiction of the 66th District Court and then question the jurisdiction of that court on review. *See Kohls*, 461 S.W.2d at 465; *Moore*, 430 S.W.2d at 250; *Dutchover*, 334 S.W.2d at 573; *see also* 4 TEX.JUR.2d § 766, p. 276. She is estopped from doing so under the doctrine of invited error. *See Kohls*, 461 S.W.2d at 465; *Moore*, 430 S.W.2d at 250; *Dutchover*, 334 S.W.2d at 573; *see also* 4 TEX.JUR.2d § 766, p. 276.

And furthermore, a review of the record also shows that the California trial court declined to rule on the validity of the Texas Note. Indeed, California Judge George A. Miram refused to conclude that the Texas Note was cancelled or extinguished. Specifically, Judge Miram stated that whether the Texas Note was meant to replace the California notes was "for the Texas courts to determine. And what the meaning of that

___

then to reverse its orders upon the ground that it had no jurisdiction would be to allow one to trifle with the courts. The principle is one of estoppel in the interest of a sound administration of the laws whereby the regularity or even validity of an act procured by one himself cannot be raised—not that the act is valid, for it may not be, and estoppel does not make valid the thing complained of, but merely closes the mouth of the complainant.

*Id.* at 250-51 (quoting *Spence v. State Nat'l Bank of El Paso*, 5 S.W.2d 754, 756 (Tex. Comm'n App. 1928)).

is really for the courts to determine. The only concern, in this court, is whether or not the California notes are extinguished or not." Judge Miram ultimately concluded that the California notes had been cancelled; however, he also noted the following:

> And I indicated in chambers, to the extent there is discussion of that issue, that's about—that's for the Texas courts to decide. There has already been a verdict, apparently, on this partial summary judgment motion [Mark's first summary-judgment motion filed in the 66th District Court in Hill County, Texas]. Texas rendered that it has already reviewed the evidence at least to some extent . . .
>
> —in that Court. And whatever the contentions of the parties are, is to be sorted out by that court, not this one.
>
> . . .
>
> I'm talking only about the California notes in this court. To the extent there is a Texas action pending, this court's rulings are not intended to have any action—any effect on that. And I will decline to rule on the Texas note, in and of itself, and leave that to the Texas court to decide, which has had jurisdiction of the note in Texas, since before this court was asked to intervene and asked to rule on it.

Therefore, based on the evidence in the record, we cannot agree with Colette's contention that Judge Miram or any other California trial court determined that the Texas Note was extinguished and cancelled. Accordingly, we overrule Colette's first issue.

## B. Breach of Fiduciary Duty

In her second issue, Colette argues that Mark breached a fiduciary duty owed to her by filing a "fraudulent inchoate lien on her Texas real estate." Colette alleges that Mark owed her a fiduciary duty based on his prior position as estate trustee and his representation of her interests in the California litigation.

"Although the existence of facts giving rise to a fiduciary duty is a question for the factfinder's determination, the issue of whether those facts give rise to a formal fiduciary relationship is a question of law." *Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 627 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (internal citations omitted). Furthermore, "'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176-77 (Tex. 1997)). "A formal fiduciary relationship is one created by law or by the nature of the contract between the parties." *Guidry*, 282 S.W.3d at 628 (citing *Peckham v. Johnson*, 98 S.W.2d 408, 416 (Tex. Civ. App.—Fort Worth 1936), *aff'd*, 132 Tex. 148, 120 S.W.2d 786 (1938)). "The existence of a formal fiduciary relationship is determined by the relationship between the parties, and if such a relationship existed, questions of whether one party relied on or confided in the other are immaterial." *Id.* Courts do not create fiduciary relationships lightly. *Id.* (citing *Schlumberger Tech. Corp.*, 959 S.W.2d at 177).

Here, the trust documents indicate that Beatrice was the trustee of the trust and that her attorney, John P. Breckenridge, was the successor trustee. And as mentioned above, R. Michael Lydon was eventually named as the successor trustee once family members began disputing the trust documents in California. In any event, there is no credible evidence demonstrating that Mark was the trustee of the trust when Colette was

a beneficiary, nor any other trust in which Colette was a beneficiary. Rather, Mark only had powers of attorney for Beatrice for a short period of time.

However, despite the foregoing, in an attempt to establish that Mark owed her a fiduciary duty, Colette directs us to a "Cooperation Agreement" that was signed on April 18, 2014. As noted in the document, the purpose of this agreement was to cooperate in pursuing the separate, potentially but not actually conflicting, interests of Mark and Colette and,

> in pursuing the separate claims of Mark and Colette, the Parties agree to jointly defend the interests of their clients and thus waive any attorney-client communication privilege with respect to any communications between the Parties, but to preserve the privilege for the benefit of the clients with respect to any external parties. They further agree it is in their best interests and necessary to participate in joint efforts involving the exchange of "Confidential Information," as defined in Paragraph 2.

However, a review of the document reveals that it was signed by Mark and Colette's attorneys, not Mark and Colette themselves. Furthermore, the document does not say anything about duties Mark owed to Colette. Accordingly, applying the appropriate standards, we cannot say that the evidence relied upon by Colette created a material fact issue regarding whether Mark owed Colette a formal fiduciary duty. *See Guidry*, 282 S.W.3d at 627; *see also Meyer*, 167 S.W.3d at 330; *Schlumberger Tech. Corp.*, 959 S.W.2d at 176-77; *Peckham*, 98 S.W.2d at 416.

Additionally, Colette also appears to assert that the evidence established that Mark owed her an informal fiduciary duty.

An informal relationship may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely a personal one. But not every relationship involving a high degree of trust and confidence rises to the status of a fiduciary relationship. Outside the cases in which formal fiduciary duties arise as a matter of law, confidential relationships may arise when one party has dealt with another in a certain manner for a long period of time such that one party is justified in expecting the other to act in its best interest. However, in order to give full force to contracts, we do not create such a relationship lightly. Thus, while a fiduciary or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit.

*Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied) (internal citations omitted). Mere subjective trust does not transform arm's-length dealing into a fiduciary relationship. *See Schlumberger Tech. Corp.*, 959 S.W.2d at 177.

The record is devoid of evidence showing that Colette had a special relationship with Mark, other than being siblings, that gave rise to an informal fiduciary relationship. Colette cannot establish an informal fiduciary relationship by merely remarking that she "trusted" Mark. Without more, we cannot say that Colette established an issue of material fact with regard to any purported informal fiduciary duty owed by Mark to her. We overrule her second issue.[3]

---

[3] In addition to her arguments of formal and informal fiduciary duties owed by Mark in this issue, Colette also argues that there is no deficiency owed and that Mark seeks a triple recovery. This additional argument is arguably multifarious. *See In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied) (observing that a multifarious issue or point of error is one that raises more than one specific ground of error). Courts may disregard any assignment of error that is multifarious. *Rich v. Olah*, 274 S.W.3d 878, 885 (Tex. App.—Dallas 2008, no pet.). However, courts may consider a multifarious issue if it can determine, with reasonable certainty, the error about which the appellant wants to complain. *Id.* In making this argument, Colette does not direct us to specific evidence or provide citations to the record

## C.     Issues of Material Fact

In her third issue, Colette contends that the trial court improperly granted Mark's summary-judgment motions because "substantial conflicts of material fact exist in the record." Colette challenges both the trial court's conclusion that Mark was entitled to recover on the Texas Note and determination that her causes of action had no merit.

### 1.     The Promissory Note

A plaintiff who sues for recovery on a promissory note "does not have to prove all essential elements for a breach of contract but rather need only establish the note in question, that the defendant signed it, that the plaintiff was the legal owner and holder thereof, and that a certain balance is due and owing on the note." *Rockwall Commons Assocs. v. MRC Mort. Grantor Trust I*, 331 S.W.3d 500, 505 (Tex. App.—El Paso 2010, no pet.) (citing *True Star Petroleum Corp. v. Eagle Oil & Gas Co.*, 323 S.W.3d 316, 319 (Tex. App.—Dallas 2010, no pet.); *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd)).

In support of his traditional motion for summary judgment, Mark tendered, among other things, the Texas Note, the deed of trust securing the note, and an affidavit detailing the transaction. It was undisputed that Colette signed the Texas Note and

---

supporting her argument. Rather, she merely makes bare assertions of error, which, as several courts have held, waives error. *See* TEX. R. APP. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994); *see also McKellar v. Cervantes*, 367 S.W.3d 478, 484 n.5 (Tex. App.—Texarkana 2012, no pet.). We therefore disregard this multifarious contention.

corresponding deed of trust. The deed of trust specifically stated that it was executed "[f]or value received," and Mark noted that the deed of trust was recorded in Volume 1802, Page 82, of the Hill County Official Public Records. In his affidavit, Mark recounted that the Texas Note matured on January 1, 2015, but Colette did not pay the unpaid balance. He further stated the following:

18. I released my lien on three of the properties listed in the Deed of Trust and then had a foreclosure sale conducted under the terms of the Deed of Trust on the remaining three properties described in the Deed of Trust on January 5, 2016. Plaintiff [Colette] purchased the property being sold at the foreclosure sale of the Deed of Trust by paying the price of $10,001. I had incurred in excess of $1,000 in attorney's fees and expenses in connection with the foreclosure sale so I applied the amount of $9,001 to the unpaid balance owed on the Note on January 5, 2016.

19. I have received the following payments and no other, all of which have been credited to the unpaid balance owed under the Note:

a. a reimbursement payment from the Savage Trust on September 16, 2015, $18,832.52;

b. a payment from Colette Savage on October 8, 2015 in the amount of $5,000;

c. a payment from Colette Savage on October 27, 2015 in the amount of $2,063; and,

d. net proceeds from the foreclosure sale January 5, 2016, $9,001.

20. After applying the above described payments to the accrued interest and principal of the Note, the unpaid balance owed by [Colette] to me on the Note is $221,164.48 principal and $33,558.69 interest as of the 9th day of March, 2016. In addition, the Note accrues interest daily at the rate of $109.07 per day for each day after March 9, 2016.

21. I am the owner and holder of the Note.

In her response to Mark's traditional motion for summary judgment, Colette argued that issues of material fact existed as to whether: (1) Mark was her fiduciary; (2) he exerted undue influence over her; (3) he got her to sign the Texas Note knowing she could not be called upon to pay it; and (4) there was valuable consideration for the promissory note. We have already concluded that Colette's summary-judgment evidence did not create a material fact issue as to Mark owing her a fiduciary duty— either formal or informal. With regard to undue influence claims, Colette did not direct the trial court to any specific evidence of this claim; rather, she merely alleged that Mark took advantage of her fragile emotional state at the time of her mother's death. Mere allegations in a summary-judgment motion are not competent summary-judgment proof as to create an issue of material fact.[4] *See Keenan v. Gibraltar Sav. Ass'n*, 754 S.W.2d 392, 393 (Tex. App.—Houston [14th Dist.] 1988, no writ); *see also Baxley v. PS Group, LLC*, No. 2-09-217-CV, 2010 Tex. App. LEXIS 2143, at *5 (Tex. App.—Fort Worth Mar. 25, 2010, no pet.) (mem. op.) (per curiam) ("A party who opposes a summary judgment by asserting

---

[4] Colette did attach numerous documents to her response to Mark's traditional motion for summary judgment. However, she did not specifically reference these documents when making her arguments in response to the summary-judgment motion. The Texas Supreme Court has stated that a general reference to a voluminous record that does not direct the trial court and the parties to the evidence relied upon is insufficient. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989); *see also Aguilar v. Morales*, 162 S.W.3d 825, 838 (Tex. App.—El Paso 2005, pet. denied) ("A general reference to a voluminous record that does not direct the trial court and parties to the evidence on which the movant relies is insufficient. In the absence of any guidance from the non-movant where the evidence can be found, the trial and appellate courts are not required to sift through voluminous deposition transcriptions in search of evidence to support the non-movant's argument that a fact issue exists."); *Shelton v. Sargent*, 144 S.W.3d 113, 120 (Tex. App.—Fort Worth 2004, pet. denied) (same).

an affirmative defense must offer competent summary judgment proof to support her allegations. Competent summary judgment proof must consist of more than a conclusory allegation . . . .").

And finally, the Texas Note and deed of trust state that there was valuable consideration for the note. Besides making conclusory allegations without reference to any summary-judgment proof, Colette did not rebut the presumption of validity of the note. *See Houston First Am. Savs. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) ("While we agree that these recitals are prima facie evidence that the terms of the trust were fulfilled, we note that the recitals in the trustee's deed only give rise to a presumption of validity and relate only to matters of evidence. The presumption of validity of the sale is not conclusive and may be rebutted." (internal citations omitted)). Moreover, Colette has admitted to making payments to Mark on the Texas Note, which constitutes a ratification of the note and precludes her efforts to avoid the note. *See Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.—Austin 1999, pet. denied) ("Ratification of a contract occurs when a party recognizes the validity of the contract by acting under the contract, performing under the contract, or affirmatively acknowledging the contract." (citations omitted)); *see also Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792 (Tex. App.—Austin 2002, pet. dism'd) ("Once a party ratifies a contract, it may not later withdraw its ratification and seek to avoid the contract." (citations omitted)).

Therefore, based on the foregoing, we conclude that Mark, through his summary-judgment proof, established entitlement to recovery under the Texas Note and that Colette did not proffer more than a scintilla of evidence creating a material fact issue regarding the enforceability of the note. *See Rockwall Commons Assocs.* 331 S.W.3d at 505; *True Star Petroleum Corp.*, 323 S.W.3d at 319; *Clark*, 658 S.W.2d at 295. Accordingly, we cannot say that the trial court erred in granting Mark's traditional motion for summary judgment. *See* TEX. R. CIV. P. 166a(c); *see also Knott*, 128 S.W.3d at 215; *Grant*, 73 S.W.3d at 215.

### 2. Colette's Causes of Action

Next, Colette complains that the trial court improperly granted Mark's no-evidence motion for summary judgment with regard to her causes of action. A review of the record shows that Colette alleged a litany of claims against Mark in her original petition. Many of her claims are affirmative defenses that were adjudicated when the trial court granted Mark's traditional motion for summary judgment. These include failure of consideration, lack of consideration, novation, unconscionability, and usury. *See* TEX. R. CIV. P. 94; *Fulcrum Cent. v. Autotester, Inc.*, 102 S.W.3d 274, 277 (Tex. App.—Dallas 2003, no pet.) ("Novation, or the substitution of a new agreement in place of an existing agreement between the parties, is an affirmative defense to a claim for breach of contract." (internal citation omitted)); *Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 846 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (holding unconscionability of a

contract is an affirmative defense); *see also Chrissikos v. Chrissikos*, No. 05-00-01548-CV, 2002 Tex. App. LEXIS 1658, at \*\*12-13 (Tex. App.—Dallas Mar. 6, 2002, pet. denied) ("Usury is an affirmative defense that must be set forth in a pleading." (internal citation omitted)). Additionally, in concluding that Mark established entitlement to recovery on the Texas Note, we necessarily addressed failure and lack of consideration in Mark's favor.

As mentioned earlier, the trial court granted Mark's no-evidence motion for summary judgment pertaining to Colette's causes of action. Additionally, in its summary-judgment order, the trial court sustained numerous objections Mark lodged to Colette's summary-judgment response. In his objections, Mark argued that Colette's response did not contain admissible summary-judgment evidence because the response did not allege facts, but rather consisted of argument, opinions, and conclusions. And although Colette attached numerous "exhibits" to her response, she did not explain, with appropriate citations, how those exhibits created the material fact issues she claimed were present. Mark asserted that Colette filed voluminous papers without providing any guidance to the trial court.

Texas courts have consistently held that it is the non-movant's burden to "produce [more than] a scintilla of evidence raising a genuine issue of material fact as to the challenged elements." *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citing *Ridgway*, 135 S.W.3d at 600). Because the trial court sustained Mark's

objections, we cannot say that Colette, in her response to Mark's no-evidence motion for summary judgment, produced at least a scintilla of evidence raising a genuine issue of material fact. *See Lightning Oil Co.*, 520 S.W.3d at 45; *see also Ridgway*, 135 S.W.3d at 600. Furthermore, on appeal, Colette does not challenge the trial court's decision to sustain Mark's objections to her summary-judgment response. Therefore, based on the foregoing, we cannot say that the trial court erred in granting Mark's no-evidence motion for summary judgment as to Colette's claims against him. *See* TEX. R. CIV. P. 166(i); *see also Tamez*, 206 S.W.3d at 582. We overrule Colette's third issue.

## D. Res Judicata

In her fourth issue, Colette asserts that the trial court erred by "failing to apply the doctrines of res judicata and issue preclusion" to "prevent adjudication of the dispute by the Texas trial court." Specifically, Colette argues that the issues in this matter were already litigated in the California trial court prior to being raised in Texas by Mark.

Res judicata bars the relitigation of claims that have been finally adjudicated or that could have been litigated in the prior action. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). The policies behind res judicata reflect the need to bring all litigation to an end, to prevent vexatious litigation, to maintain stability of court decisions, to promote judicial economy, and to prevent double recovery. *Id.* at 629. For res judicata to apply, the following elements must be met: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity

with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008). In short, res judicata precludes parties from relitigating claims that have been finally adjudicated by a competent tribunal. *See Barr*, 837 S.W.2d at 628.

The doctrine of collateral estoppel or issue preclusion is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Collateral estoppel is more narrow than res judicata in that it only precludes the relitigation of identical issues of fact that were actually litigated and essential to the judgment in a prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

In her appellant's brief, Colette does not cite to any evidence in the summary-judgment record to support her contentions in this issue. Arguably, this issue is inadequately briefed under Texas Rule of Appellate Procedure 38.1(i). *See* TEX. R. APP. P. 38.1(i). Additionally, as noted above, a review of the summary-judgment record reveals that the California trial court expressly declined to make any determination regarding the enforceability of the Texas Note. In other words, we have found nothing in the record to suggest that the California trial court ruled on the enforceability of the Texas Note and thereby precluded the 66th District Court from ruling on the enforceability of the note. As such, we conclude that this issue lacks merit; we overrule Colette's fourth issue.

**E.      Sanctions**

In her fifth and final issue, Colette alleges that Mark "should be sanctioned for his criminal actions in unlawfully filing a fraudulent inchoate lien against appellant's Texas real estate."  More specifically, Colette argues that Mark improperly foreclosed on her property because the California trial court concluded that the two California notes that she signed in favor of Mark were cancelled and extinguished.

Notwithstanding the fact that the California trial court expressly did not rule on the enforceability of the Texas Note and that Mark was entitled to foreclose on the property based on the deed of trust securing the Texas Note, Colette does not direct us to any request made in the trial court for the requested sanctions.  Texas Rule of Appellate Procedure 33.1(a) provides that, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion with sufficient specificity to make the trial court aware of the complaint.  *See* TEX. R. APP. P. 33.1(a).  Colette does not direct us to any request made in the trial court for sanctions on these grounds, nor does she indicate that the trial court conducted a hearing or entered a final order on the requested sanctions.  Accordingly, we cannot say that Colette has preserved this issue for review.  *See id.*  And to the extent that Colette asks for sanctions on appeal, under these circumstances, we are not inclined to impose, sua sponte, sanctions at this time.  We overrule Colette's fifth issue.

## IV. CONCLUSION

Having overruled all of appellant's issues, we affirm the judgments of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
(Chief Justice Gray concurs with a note)*
Affirmed
Opinion delivered and filed October 24, 2018
[CV06]

*(Chief Justice Gray concurs in the judgment of the Court to the extent it affirms the trial court's judgment.  A separate opinion will not issue.)

